# David Arlen Schaer *vs.* Brandeis University.

Middlesex. May 1, 2000. - September 25, 2000.

Present (Sitting at Worcester): MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, & COWIN, JJ.

*Practice, Civil,* Complaint, Motion to dismiss. *Contract,* Private college. *Due Process of Law,* Private college. *Education,* Private colleges and universities, Disciplinary matter.

In an action brought by a student against a university seeking injunctive relief and compensatory damages for alleged breach of a contract to provide education in return for the payment of tuition, a Superior Court judge correctly allowed the defendant's motion to dismiss for failure to state a claim upon which relief can be granted, where the plaintiff failed to assert facts that established that the university failed to meet his reasonable expectations under the contract [477-481] or that the university had conducted an unfair hearing on a disciplinary matter involving the plaintiff [481-482]. IRELAND, J., dissenting, with whom COWIN, J., joined. COWIN, J., dissenting, with whom IRELAND, J., joined.

CIVIL ACTION commenced in the Superior Court Department on June 4, 1996.

The case was heard by *Herman J. Smith, Jr.,* J., on a motion to dismiss.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Alan D. Rose (Alan D. Rose, Jr.,* with him) for the defendant.

*David M. Lipton* for the plaintiff.

The following submitted briefs for amici curiae:

*Harvey A. Silverglate, William C. Newman, & John Reinstein* for American Civil Liberties Union of Massachusetts & another.

*Robert E. Sullivan, Margaret Wood Hassan, Andrea C. Kramer, & Nina R. Mishkin* for Babson College & others.

ABRAMS, J. The plaintiff, David Arlen Schaer, a student at Brandeis University (Brandeis), filed a seven-count complaint in the Superior Court against Brandeis, seeking injunctive relief

and compensatory damages.[1] One Superior Court judge denied injunctive relief and another dismissed the entire complaint for failing to state a claim for which relief can be granted. See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 755 (1974). Schaer appealed from the dismissal of his complaint. The Appeals Court affirmed for the most part, but reversed on count three of the complaint, which alleged breach of contract. *Schaer v. Brandeis Univ.*, 48 Mass. App. Ct. 23 (1999). We granted Brandeis's application for further appellate review.[2] We conclude that Schaer has failed to state a claim on which relief may be granted. We affirm the judgment of the Superior Court.

1. *Facts and procedural history.* On March 25, 1996, a female student (complainant) filed a report with the Brandeis student judicial system. In the report, she stated that Schaer came to her dormitory room during the early hours of February 14, after she had spoken with him on the telephone. The complainant alleged that, after they kissed, she told Schaer that she "did not want to have sex." She further alleged that she later awoke from sleep to find Schaer having intercourse with her.

After a hearing on April 24, the university board on student conduct (board) found Schaer to have (1) engaged in unwanted sexual activity and (2) created a hostile environment. The board suspended Schaer for approximately four months[3] and placed him on disciplinary probation for his remaining time at

---

[1]In addition to the injunctive relief and the breach of contract claim (at issue before us), Schaer sought compensatory damages for (1) violation of his civil rights; (2) fraud; (3) interference with an advantageous and contractual relationship; (4) violation of his right to privacy; and (5) intentional infliction of emotional distress.

Schaer filed this complaint against Brandeis and seven individual defendants. None of the seven individual defendants is a party to this appeal.

[2]We agree with the Appeals Court that, although Schaer would have completed his undergraduate work at Brandeis University (Brandeis) by now, this appeal is not moot "because there are claims of money damages and . . . because notation of the board's decision in Schaer's student record has potential for harming his career." *Schaer v. Brandeis Univ.*, 48 Mass. App. Ct. 23, 25 (1999).

[3]The suspension was during Brandeis's summer recess and prohibited Schaer's presence on the Brandeis campus. As the Appeals Court noted, it "was not without consequence because Schaer had intended to spend the summer continuing work on a biomedical research project in a Brandeis laboratory." *Schaer v. Brandeis Univ.*, *supra* at 24.

Brandeis.[4] Schaer requested a new hearing before the university appeals board on student conduct (appeals board). The appeals board denied his request on May 13.

On June 4, Schaer filed his complaint in the Superior Court, alleging that he had been unfairly disciplined. He sought injunctive relief and compensatory damages. A Superior Court judge held a hearing and denied Schaer's request for an injunction. Brandeis then moved to dismiss Schaer's complaint for failure to state a claim for which relief could be granted. See Mass. R. Civ. P. 12 (b) (6). A second Superior Court judge granted Brandeis's motion, and Schaer appealed.

The Appeals Court upheld the Superior Court judge's judgment of dismissal except with respect to Schaer's breach of contract count.[5] We agree with the Appeals Court that only the breach of contract claim needs to be analyzed. As to this claim, the Appeals Court reversed the Superior Court, concluding that "Schaer's complaint, indulgently read, *Federico* v. *Brockton Credit Union*, 39 Mass. App. Ct. 57, 61 (1995), states a claim that Brandeis did not substantially conform its disciplinary process in Schaer's case to the [contract]." *Schaer* v. *Brandeis Univ.*, *supra* at 29. The Appeals Court based its conclusion on Schaer's allegations that Brandeis failed to follow certain procedures outlined in "Rights and Responsibilities" (contract), which is contained within Brandeis's student handbook. *Id.* at

---

[4]The board also ordered Schaer to avoid all contact with the complainant and to undergo professional counselling.

[5]Count III of Schaer's complaint, entitled "Breach of Contract v. Brandeis," includes the following paragraphs:

"113. [Schaer] repeats the allegations contained in paragraphs 1 through 108 as if set forth at length.

"114. The [d]efendant, Brandeis, has by its action breached its agreement with [Schaer] to provide him with an education and to accord to him all of the privileges and rights of being a student at Brandeis, in exchange for [Schaer] paying his tuition and fees and otherwise observing the rules and regulations of Brandeis.

"115. [Schaer] has performed all of his obligations under the contract.

"116. Brandeis has breached the contract and has caused damage to [Schaer].

"Wherefore [Schaer] demands damages against Brandeis measured by all of the payments made by [Schaer] for tuition and fees, compensation for the damage to his reputation and for the emotional distress that he has suffered."

28-29. The Appeals Court concluded that Brandeis failed to follow its own procedures in five respects.[6] *Id.* at 29-30.

2. As a threshold matter, we note that the judge could have dismissed Schaer's complaint for failure to state "a short and plain statement of the claim." Mass. R. Civ. P. 8 (a) (1), 365 Mass. 749 (1974). See *Garrity* v. *Garrity*, 399 Mass. 367, 369 (1987). The complaint, including attachments, is more than 115 pages and includes 125 separately numbered paragraphs. See *Schaer* v. *Brandeis Univ., supra* at 25 ("Schaer's complaint is anything but a 'short and plain statement of the claim.' Mass. R. Civ. P. 8(a)(1) . . . . It sends 125 paragraphs sprawling over thirty-four pages"). Each of the seven counts incorporates paragraphs one through 108 in their entirety. In short, the complaint fails adequately to inform Brandeis " 'of the nature of [each] claim and the grounds on which [Schaer] relies.' *Druker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976)." *Garrity* v. *Garrity, supra.* Because neither the Superior Court nor the Appeals Court dismissed Schaer's complaint on this basis, we turn to the substance of the motion to dismiss.

A motion to dismiss under rule 12 (b) (6) should be allowed if Schaer has "fail[ed] to state a claim upon which relief can be granted." In evaluating a rule 12 (b) (6) motion, we take into consideration "the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 299 (1990). We also accept Schaer's factual allegations as true. *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998). However, we do not accept legal conclusions cast in the form of factual allegations. "The rule that we accept [Schaer's] well-pleaded factual aver-

---

[6] The violations may be summarized using the Appeals Court's characterizations:

"a. Failure to make careful evaluation of the facts and of the credibility of persons reporting them, as required by § 17 of the [contract] . . . .

"b. Failure to make a record of the proceedings of the board, as required by § 19.14 . . . .

"c. Receipt of irrelevant and inflammatory evidence, in violation of § 19.13 of the [contract] . . . .

"d. Failure to apply 'clear and convincing evidence' standard prescribed by § 19.13 of the [contract] . . . .

"e. Failure to accord Schaer the process due under § 18.11 of the [contract]." *Schaer* v. *Brandeis Univ., supra* at 29-30.

ments and indulge every reasonable inference hospitable to [his] case 'does not entitle [him] to rest on "subjective characterizations" or conclusory descriptions of a "general scenario which could be dominated by unpleaded facts." ' " *Judge* v. *Lowell*, 160 F.3d 67, 77 (1st Cir. 1998), quoting *Correa-Martinez* v. *Arrillaga-Belendez*, 903 F.2d 49, 53 (1st Cir. 1990). See generally 5A C.A. Wright & A.R. Miller, *supra* at 315-318 nn.16-21, and cases cited.

Because the parties do not dispute the fact that a contractual relationship exists between Schaer and Brandeis, we assume, without deciding, that such a contractual relationship exists. Thus, we employ "the standard of 'reasonable expectation — what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.' " *Cloud* v. *Trustees of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983), citing *Lyons* v. *Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1977), cert. denied, 435 U.S. 971 (1978). We therefore review each factual allegation to determine whether Schaer has asserted facts which establish that Brandeis failed to meet his reasonable expectations, thereby violating its contract with Schaer.[7]

a. *Failure to investigate in accordance with procedures established by §§ 16.5 and 17 of the contract.* Schaer contends that Brandeis violated §§ 16.5 and 17 of the contract by failing to investigate the complaint. Schaer asserts that at the time of the investigation, he was not asked to give a statement, to offer evidence, or to provide witnesses. As the Superior Court judge noted, Schaer has failed to state a claim under § 16.5 because that section does not apply to investigations of student misconduct.[8]

Section 17 provides, in relevant part: "[T]he available facts shall be gathered from the [complainant] and a careful evaluation of these facts, as well as the credibility of the person report-

---

[7]We note that, in her dissent, Justice Cowin tests the legal sufficiency of Schaer's complaint without regard to the "reasonable expectation" standard set forth in *Cloud* v. *Trustees of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983). *Post* at 486-488. Thus, her analysis is not in accord with *Cloud*.

[8]Section 16.5 is within a section entitled "Policy on Protection of Privacy" and applies to investigations of reported privacy issue violations, such as when a student's room is inspected by a member of the resident staff without providing the requisite advance notice. In his dissent, Justice Ireland relies on § 16.5 to suggest that there may not have been a thorough investigation. *Post* at 485. Section 16.5 simply is not applicable to investigations of student misconduct.

ing them, shall be made. If corroboration of the information presented is deemed necessary, further inquiry and investigation shall be undertaken." Nothing in this section requires university officials to obtain an interview from the accused student, to seek evidence from the accused student, or to grant the accused student an opportunity to provide witnesses at the investigatory stage in the proceedings. Thus, Schaer could not assign to the contract the meaning he now claims it has. On the facts alleged, Schaer has not stated a claim for which relief may be granted on the ground that Brandeis violated §§ 16.5 or 17 of the contract.

b. *Failure to employ the standard of proof required by § 19.13.* Schaer alleges that Brandeis violated § 19.13, which requires that the board must base its finding "only upon clear and convincing evidence." His contention that the board failed to use the appropriate standard is a legal conclusion, not a factual allegation. "It is only when . . . conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." *The Dartmouth Review* v. *Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989). See generally 5A C.A. Wright & A.R. Miller, *supra*. Schaer has not set forth facts specifically supporting this allegation. In the absence of such facts, we conclude that Schaer has not stated a claim for which relief may be granted.[9]

c. *Failure to use evidence in accordance with the procedures outlined in § 19.13.* Schaer contends that the board violated its

---

[9]There is no merit to Justice Cowin's assertion that, because there was conflicting evidence, there is the possibility that the burden of proof was not met. *Post* at 486. On the record before us, the board's decision is supported by a written statement by the complainant, her complaint, testimony of corroborating witnesses, and Schaer's own admissions. The Appeals Court incorrectly characterized the record as "no more than 'she said' against 'he said.'" *Schaer* v. *Brandeis Univ.*, *supra* at 30. There was ample evidence which, if believed, could have supported the board's decision on a clear and convincing standard. The report, although short, reflects a judgment by the board that the complainant and the corroborating witnesses were credited; Schaer and his witnesses were not credited. Further, there is no basis for adding a requirement that the board *explicitly* state that it is applying a clear and convincing standard. Such a requirement is not part of the contract and courts do not require jurors to so state. There is no basis for courts to impose a higher standard on universities than that which they impose on themselves.

contract by excluding testimony from an expert (Schaer's sister[10]) as to the difference between rape and "regretted sex." Instead of admitting this testimony, Schaer asserts, the board used its own experience to reach its finding. Schaer concludes that this violated § 19.13, which provides, in relevant part: "Decisions shall be based solely upon evidence and testimony introduced at the hearing." As the Superior Court judge noted: "This claim does not state a violation of [§] 19.13. While that rule prohibits the board from evaluating *evidence* not introduced at the hearing, it does not preclude members of the [board] from using their own common sense and expertise." Schaer has not stated a claim for a violation of § 19.13.[11]

d. *Failure to make a record, as required by § 19.14.* Schaer also alleges that Brandeis violated § 19.14, which requires a record of the proceedings. Schaer does not dispute that a record was made, but contends that the record is insufficient. Specifically, he contends that the " 'record' does not contain a summary of the testimony, in direct contravention of the language of the rule." Further, he contends that the brief record is inadequate documentation of thirteen witnesses who presented conflicting testimony over more than five hours.

Section 19.14 provides, in relevant part: "A record of each hearing, comprised of a summary of the testimony and evidence presented, and of the decision rendered, shall be made by the adviser to the board." The section does not require that the testimony of each witness be summarized. It does not require the record to be any minimum length.[12] We note that the report was extremely brief. The better practice would have been to

[10]Schaer's complaint states that his sister "had been a contributing writer on sexuality to The College Woman's Handbook (Workman Press)." No additional citation information is provided in the complaint.

[11]The Appeals Court also addresses the introduction of statements of two witnesses as a violation of § 19.13. One witness, a Brandeis police officer, testified that, when she saw the complainant one month after the incident, the complainant "looked like a rape victim." A second witness was allowed to opine that Schaer was "a self-motivated egotistical bastard." The Appeals Court concluded that "[b]oth statements are so without rudimentary foundation and so unfairly prejudicial that they can be said to be in violation of § 19.13." *Schaer* v. *Brandeis Univ.*, *supra* at 30. Nothing in § 19.13 of the contract describes the admission of testimony of witnesses. Thus, Schaer may not claim that his reasonable expectations, based on his contract with Brandeis, have not been met.

[12]We recognize that students were actively involved in these disciplinary proceedings. Five of the seven members of the board were students.

produce a more complete report. Nevertheless, nothing in the contract suggests that disciplinary proceedings will be conducted as though they were judicial proceedings. We conclude that Schaer may not properly claim that the record here failed to meet his reasonable expectations.[13]

3. In addition to reviewing the allegations of breach of contract, "[w]e . . . examine the hearing to ensure that it was conducted with basic fairness." *Cloud* v. *Trustees of Boston Univ.*, *supra* at 725. See *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 20 (1983). The Superior Court judge carefully teased out the allegations of unfair process Schaer sprinkled through his complaint. We have reviewed the complaint and discern no additional allegations that require discussion.

The complaint includes allegations of violation of basic fairness due to the improper admission of testimony from four witnesses.[14] Although these statements would be excluded from a courtroom under the rules of evidence, a university is not required to abide by the same rules.[15] Brandeis may choose to admit all statements by every witness or it may choose to exclude some evidence. It is not the business of lawyers and judges to tell universities what statements they may consider and what statements they must reject. We conclude that admission of these statements does not constitute a violation of the contract. The facts alleged do not show that Schaer was denied basic fairness.

The complaint also alleges that the hearing was conducted in an atmosphere of "hysteria and misinformation." This allega-

---

[13]The Appeals Court also discussed an additional allegation: "Failure to accord Schaer the process due under § 18.11 of the [contract]." *Schaer* v. *Brandeis Univ.*, *supra* at 30. See note 1, *supra*. The Appeals Court concluded that "the issue could not be flicked away on a motion under rule 12(b)(6)." *Id.* We disagree. We have carefully read the voluminous complaint and cannot find any allegation of a violation of § 18.11 of the contract. Thus, we conclude that Schaer has not stated a claim for breach of contract based on a violation of this section of the contract.

[14]The testimony of two of these witnesses is discussed above. See note 11, *supra*. The third witness, according to Schaer, misstated a response Schaer had given in a conference prior to the hearing. The fourth witness, a student who worked with Schaer on the student newspaper, testified as to a change Schaer suggested be made in an editorial about rape.

[15]Indeed, in its contract, Brandeis notifies its students in § 19.10 of the contract that, at a disciplinary hearing, "[t]he technical rules of evidence applicable to civil and criminal cases shall not apply."

tion is based on the fact that several articles and editorials about rape were published in the student newspaper during March, 1996, Women's Month at Brandeis. Schaer further alleges that some of the "hysterically published" information is invalid. These allegations do not support a conclusion that Schaer's hearing was not conducted with basic fairness. Nothing in these allegations addresses the conduct of the hearing. There is no reasonable inference from these allegations that the situation on campus, assuming the truth of the allegations, affected the disciplinary proceedings. The factual allegations in the complaint do not support the conclusion set forth in the complaint.[16]

4. We adhere to the principle that "[c]ourts are chary about interfering with academic and disciplinary decisions made by private colleges and universities." *Schaer* v. *Brandeis Univ., supra* at 26, citing *Russell* v. *Salve Regina College*, 890 F.2d 484, 489 (1st Cir. 1989), rev'd on other grounds, 499 U.S. 225, reinstated on remand, 938 F.2d 315 (1st Cir. 1991). A university is not required to adhere to the standards of due process guaranteed to criminal defendants or to abide by rules of evidence adopted by courts. "A college must have broad discretion in determining appropriate sanctions for violations of its policies. See *Woods* v. *Simpson*, [146 Md. 547, 551 (1924)]. Cf. *Frank* v. *Marquette Univ.*, [209 Wis. 372, 377-378 (1932)]." *Coveney* v. *President & Trustees of the College of the Holy Cross, supra* at 20. Last, we advise that nothing in this decision dampens the teachings of *Coveney*, which applies in cases where there is no contractual relationship.

While a university should follow its own rules, Schaer's allegations, even if true, do not establish breaches of contract by Brandeis. Thus, Schaer has failed to state a claim for which relief can be granted. We affirm the judgment of dismissal entered by the Superior Court.

*So ordered.*

---

[16]We pause to emphasize, in response to Justice Cowin's dissent, that our conclusions essentially result from determinations that the facts alleged by Schaer, even if true, do not establish claims for breach of contract; and that we are not bound to accept as true conclusions of fact or law which Schaer fails to support with specific factual allegations. We thus have not departed from applying the appropriate standard of review to a motion to dismiss for failure to state a claim.

IRELAND, J. (dissenting, with whom COWIN, J., joins). I write separately because I believe the court, while correctly assuming that a contract exists between Brandeis and its students regarding the university's disciplinary procedures, fails to interpret the provisions of the disciplinary code in a commonsense way, or in a manner consistent with the standard rules of contract interpretation. The strained reading the court gives to these contractual provisions is troubling because Brandeis should be required to follow its own internal rules when imposing serious disciplinary sanctions on a student. As consumers,[1] students should not be subject to disciplinary procedures that fail to comport with the rules promulgated by the school itself. I therefore respectfully dissent. As I also believe that the court does not apply the appropriate standard of review to a motion to dismiss, I am in agreement with the dissent of Justice Cowin. *Post* at 485-488.

The court assumes, without deciding, that a contractual relationship exists between Brandeis and its students. *Ante* at 478. I would further state that such a contractual relationship is well established in Massachusetts, see, e.g., *Hood* v. *Tabor Academy*, 296 Mass. 509, 510 (1937) (student expulsion analyzed under breach of contract theory); *Mangla* v. *Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998) (holding that "student-college relationship is essentially contractual in nature" and that the "terms of the contract may include statements provided in student manuals and registration materials"); *Dinu* v. *President & Fellows of Harvard College*, 56 F. Supp. 2d 129, 130 (D. Mass. 1999), and cases cited ("That the relationship between a university and its students has a strong, albeit flexible, contractual flavor is an idea pretty well accepted in modern case law. . . . So too, is the proposition that a student handbook . . . can be a source of the terms defining the reciprocal rights and obligations of a school and its students"), and other jurisdictions, see, e.g., Bhandari *vs.* Trustees of Columbia Univ., No. 00 Civ. 1735 JGK (S.D.N.Y. 2000); *Holert* v. *University of Chicago*,

---

[1]As college costs have been rapidly increasing, students and their parents often must make a substantial financial investment to obtain an education. See Contemporary Calculus: Economically Driven Decisions Are Transforming Higher Education, U.S. News & World Rep., September 1, 1997 (reporting that, controlling for inflation, the cost of an undergraduate education doubled between 1976 and 1995); College Tuition Outpaces Inflation Again, Wall St. J., March 12, 1999, at A2 (describing rapid increase in college costs, and reporting that yearly tuition at some institutions is over $30,000 a year).

751 F. Supp. 1294, 1301 (N.D. Ill. 1990) (relationship between university and student "strictly contractual in nature").

The contours of this "relaxed" contractual relationship, which also may be derived from associational rights, are that in exchange for tuition and the student's compliance with university rules, the university will not act "arbitrarily or capriciously" in disciplining a student. *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 19 (1983). To me, it appears that this prohibition of arbitrary and capricious action would also include the university's obligation to follow the rules and procedures that it has itself put forth in regard to disciplinary proceedings. See, e.g., *Fellheimer* v. *Middlebury College*, 869 F. Supp. 238, 244-246 (D. Vt. 1994) (analyzing disciplinary procedures and finding that college failed to provide student with process described in student handbook); *Clayton* v. *Trustees of Princeton Univ.*, 519 F. Supp. 802, 806 (D.N.J. 1981) ("Certainly the proposition that once an organization has established rules for itself it must follow them is not a radical proposition"); *Harvey* v. *Palmer College of Chiropractic*, 363 N.W.2d 443, 445 (Iowa Ct. App. 1984) (university must follow disciplinary procedures detailed in student handbook); *Tedeschi* v. *Wagner College*, 49 N.Y.2d 652, 660 (1980) (holding that "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed").

The court, however, goes on to analyze the provisions in the "Rights and Responsibilities" section in a manner inconsistent with the standard principles of contract interpretation. The handbook was issued by Brandeis unilaterally. As such, any ambiguities in the contract should be construed against the drafter, especially, as here, where there is no opportunity for meaningful negotiation of any of the terms. See *Corso* v. *Creighton Univ.*, 731 F.2d 529, 532-533 (8th Cir. 1984) (interpreting terms in university handbook by rules of standard contract interpretation, court construed terms against drafter). However, even interpreting the contract under the standard articulated by the court, see *ante* at 478, that would adopt the meaning of the terms that the university would expect the other party to give it, I still do not understand how the court can read the terms of the contract in the way that it does.

For example, § 19.14 of the Rights and Responsibilities

provides for the making of a record, "comprised of a summary of the testimony and evidence presented." Here the summary consisted of only twelve lines. Given the student's right to an appeal under § 19.16, it would seem that the record here did not comply with the contract. Further, § 16.5 states that violations of university regulations "shall be thoroughly and impartially investigated," and it is not clear to me, taking Schaer's allegations to be true, see *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), and cases cited, that there was a thorough investigation. These potential breaches of the contract are explicated more fully in the dissent of Justice Cowin, and the cogently reasoned opinion of the Appeals Court. See *Schaer* v. *Brandeis Univ.*, 48 Mass. App. Ct. 23 (1999).

In short, if the university puts forth rules of procedure to be followed in disciplinary hearings, the university should be legally obligated to follow those rules. To do otherwise would allow Brandeis to make promises to its students that are nothing more than a "meaningless mouthing of words." *Tedeschi* v. *Wagner College*, *supra* at 662. While the university's obligation to keep the members of its community safe from sexual assault and other crimes is of great importance, at the same time the university cannot tell its students that certain procedures will be followed and then fail to follow them. In a hearing on a serious disciplinary matter there is simply too much at stake for an individual student to countenance the university's failure to abide by the rules it has itself articulated. I would therefore not affirm the dismissal of Schaer's complaint so hastily.

COWIN, J. (dissenting, with whom IRELAND, J., joins). I respectfully dissent from the court's opinion because in my view, as the Appeals Court concluded, see *Schaer* v. *Brandeis Univ.*, 48 Mass. App. Ct. 23, 30 (1999), Schaer's complaint is sufficient to survive a motion to dismiss.[1] See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). "The rules of pleading in Massachusetts are generous." *Capazzoli* v. *Holzwasser*, 397 Mass. 158, 162 (1986) (Abrams, J., concurring), quoting *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 615 (1983). The lenient standard for assessing the sufficiency of a complaint is well established: "a

---

[1] I also join in Justice Ireland's dissent that Brandeis should be required to follow its own internal rules when imposing serious disciplinary sanctions on a student. *Ante* at 483-485.

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). Moreover, "the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Id.* "These generous and indulgent criteria have reduced a plaintiff's obstacle in surmounting a . . . failure to state a claim to a minimal hurdle." *Brum* v. *Dartmouth*, 44 Mass. App. Ct. 318, 321 (1998), *S.C.*, 428 Mass. 684 (1999). See *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998), quoting *Gibbs Ford, Inc.* v. *United Truck Leasing Corp.*, 399 Mass. 8, 13 (1987) ("It is a 'relatively light burden to be carried in maintaining a complaint' ").

The parties agree and the court assumes that "a contractual relationship exists between Schaer and Brandeis." *Ante* at 478. Thus, the only question to be decided is whether Schaer has alleged any facts which, if adopted by the factfinder, would entitle him to a judgment on a breach of contract claim against Brandeis. An indulgent reading of his complaint indicates that for at least some of his allegations of breach of contract he has stated sufficient facts to survive a motion to dismiss.

The complaint alleges that Brandeis did not apply a "clear and convincing" standard as prescribed by § 19.13 of the contract. The complaint states that "testimony in this case was in conflict" and sets out in great detail the contradictory evidence presented at the disciplinary hearing. Contrary to the court's view that "Schaer has not set forth facts specifically supporting this allegation," *ante* at 479, the recitation of the contradictory evidence contained in the complaint is sufficient to raise the possibility that the university board on student conduct (board) reached its decision without applying a clear and convincing evidentiary standard. At the very least, determinations must be made that are premature on a motion to dismiss.

The complaint alleges that Brandeis violated § 19.13 which provides that decisions shall be made solely on evidence and testimony introduced at the hearing. According to the complaint, the board excluded evidence of the difference between rape and "regretted sex" and instead relied on its own experience and expertise in reaching its conclusion. The court rejects this claim because in its view nothing in the contractual provision

"preclude[s] members of the [board] from using their own common sense and expertise." *Ante* at 480. Although the board may employ common sense to evaluate the evidence, it cannot be determined at this point whether the board properly used common sense to evaluate the evidence presented or improperly used "common sense" in lieu of evidence in reaching its decision. The complaint is sufficient to permit Schaer the opportunity to show the latter.

The complaint alleges that Brandeis violated its contractual obligations pursuant to § 19.14 of the contract by failing to create a record summarizing the testimony and evidence presented and the decision rendered. The complaint states that even though the hearing consisted of thirteen witnesses, the summary consists of twelve lines. The court concludes that this allegation is insufficient to establish a claim because the contract provision does not "require the record to be any minimum length." *Ante* at 480. While it is true that the provision does not set a minimum length requirement, it does require a summary of the testimony and evidence. A claim is adequate that alleges that a twelve-line record does not summarize a hearing with thirteen witnesses.

Another allegation is that the hearing was not conducted with "basic fairness." *Ante* at 481. In this regard, Schaer's complaint challenges the testimony of various witnesses. According to the complaint, one witness, a Brandeis police officer, testified that she saw the complainant one month after the incident and that she "looked like a rape victim"; another witness was allowed to testify that Schaer was a "self-motivated egotistical bastard"; and a third witness testified that Schaer suggested a change in a newspaper editorial concerning rape. Schaer's complaint contends that the board's decision to admit this testimony prejudiced his case and created an unfair proceeding. Although the board is not bound by the rules of evidence, at this stage, these allegations of unfairness sufficiently state a claim.

Similarly, Schaer states that the board conducted the hearing in an atmosphere of "hysteria and misinformation" that prevented him from receiving a fair hearing. His complaint asserts that several articles on campus rape appeared in the school newspaper during March, 1996, Women's Month at Brandeis, and that some of the information published was untrue. Again, it may be established at a future stage of the proceedings that such an atmosphere did not exist, was irrelevant, or did not affect the hearing, but that is not to be resolved at this point.

In reaching its conclusion, the court does not apply the rule that, in assessing the sufficiency of a complaint, all factual inferences must be drawn in favor of the plaintiff. *Nader* v. *Citron, supra.* Schaer's complaint alleges that the board did not apply the proper standard of proof; incorrect evidentiary decisions may have been made; certain evidence may have been improperly admitted; the campus atmosphere may have unfairly tainted the hearing; and the summary of the hearing did not meet the contractual requirement. Drawing all inferences in Schaer's favor, his complaint provides sufficient allegation of contractual violations that he should not be prevented at this early stage of the litigation from pursing his claims further.

The contract requires that Brandeis provide Schaer with some element of basic fairness. He claims through particularized allegations that it has not done so. This is all that is required to survive a motion to dismiss. Whether Schaer will fail at trial or even at the summary judgment stage cannot be predicted here, but a motion to dismiss "is ordinarily not the proper vehicle for testing the factual sufficiency of a plaintiff's claims." *Reardon* v. *Commissioner of Correction*, 20 Mass. App. Ct. 946, 947 (1985).[2]

The court is concerned lest it interfere "with academic and disciplinary decisions made by private colleges and universities." *Ante* at 482, quoting *Schaer* v. *Brandeis Univ.*, 48 Mass. App. Ct. 23, 26 (1999). I share the court's concern, but its disinclination to interfere with university governance should not alter basic contract law and the traditional standard for evaluating the sufficiency of a complaint. I agree with Justice Ireland's dissenting position that the university, like any other, must abide by its contracts. The plaintiff has adequately alleged that it has not done so.

---

[2]The court suggests that I am testing the legal sufficiency of Schaer's complaint without regard to the "reasonable expectation" standard of *Cloud* v. *Trustees of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983). *Ante* at 478 n.7. Schaer's reasonable expectations are formed by the contract, and he could reasonably expect Brandeis to abide by it. He has alleged that it has not done so and has included in his complaint allegations adequate to support his contention. Moreover, the *Cloud* case, as well as the decisions on which it relies, *Lyons* v. *Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1977), cert. denied, 435 U.S. 971 (1978), and *Giles* v. *Howard Univ.*, 428 F. Supp. 603, 605 (D.D.C. 1977), were all decisions in which the term "reasonable expectation" is used in conjunction with the respective courts' disagreement with the plaintiffs' interpretation of the contract. That may eventually be the result in this case, but it is not a result that can be reached on a motion to dismiss.