Fremont-Smith, J.
The following facts are undisputed. Plaintiff is a student at the University of Massachusetts Lowell (“University”). He currently is attending classes there. His complaint alleges that the University disciplined him in contravention of its disciplinary rules, so that his six-month suspension from the University was in violation of his due process rights, and hence of 42 U.S.C. §1983.
Plaintiff had faced two disciplinary actions at the University in the fall of 1998. In the first, he was accused of misappropriating a computer message board valued at more than $300 from a stockroom where he was a student employee. Plaintiff did not contest this charge, and admitted it occurred. He also faced criminal charges arising out of the theft, which were continued without a finding, with plaintiff paying a fine of $250. As a result of this uncontested incident, he was placed on Disciplinary Probation with Restrictions, which is the highest form of punishment the University has which does not involve suspension or expulsion. One of the conditions of his restrictions was that he should not work on campus for the probation period, which was to run to at least August 1999.
Later in the fall of 1998, the University brought a second set of disciplinary charges against him, which have given rise to this lawsuit. These involve the theft and improper use of a “student roster" which contained, with respect to each student at the University, the name, address, date of birth and social security number. The roster was used, with his knowledge, to harass other students, by falsely telephoning students to tell them they had large, overdue amounts owed on their credit cards. A number of students who received such calls were upset and frightened, and reported them to the University police. In a written statement to the University police, plaintiff admitted he had taken the roster and knew that it was being misused by someone placing telephone calls from his room who was pretending to be employed by a credit card collection agency.
Although plaintiff was notified that the University would bring disciplinary charges against him, he was informed at the same time that no criminal charges were contemplated. He was notified that the sanction proposed by the University was suspension through August 1999, with probation for one year upon return to the University. He requested a hearing on the charges.
In the University’s “student conduct code and judicial process,” the “standards” provide, inter alia, that “no student shall assault, threaten, harass, stalk, haze or otherwise physically or psychologically abuse any other person . . .” With respect to property, it provides “no student shall take, possess, damage or deface any University or neighborhood property or any property not his/her own.”
With respect to disciplinary procedures, it provides that a student will be notified in writing of the date, time and location of the hearing in sufficient time to prepare for it, that hearings are closed and a tape will be made of the hearing, that both parties may request *390 a submission of written, factual accounts by witnesses and may request that the authors appear at the hearing, that each student appearing at the hearing may have an advisor of his or her choice from the University community, and that the accused student may hear and question all witnesses. It further provides that “a student may elect to be accompanied at all formal proceedings of the judicial entity by an advisor of his/her choice. The advisor must be a member of the faculty, staff or student body of the University except that legal counsel may accompany a student, at the student’s discretion (and at the student’s expense), when a criminal charge arising from the matter before the judiciary is pending or is considered likely . . . absent a pending criminal charge or the bona fide likelihood thereof, the advisor must be drawn from within the University community.”
The hearing took place on November 19, 1998, at which the plaintiff appeared with his attorney. Plaintiff had previously requested the attendance of his attorney, and had been notified that, since the University was not contemplating or taking steps to pursue criminal charges against him, he was not entitled to have an attorney attend the hearing. Defendant Duggan, the Dean of Students, recused herself as head of the judicial hearing board (which consisted of three students and three university representatives) because of her involvement in the previous disciplinary proceeding. She appointed Mary Connolly who is the Director of Student Activities, Student Centers and Community Services to chair the Board in her stead. The hearing lasted approximately two and one-half hours, with one hour to hear evidence and the rest for deliberation. At the hearing, plaintiff altered his story from the written statement he had previously given to the police, contending that he had not taken the roster, but that it had been taken by his twin brother and that he was ignorant that it was being wrongfully used. The Hearing Board, by a vote of 6-0, found that plaintiff was guilty of the charges against him. (Ms. Connolly did not cast a vote, which she would do only if there were a tie.) There followed a lengthy discussion with respect to whether suspension would be the proper sanction. The members of the Board voted 3-3, so Ms. Connolly cast the tie-breaking vote to impose that penalty. The Board then agreed to shorten the period of suspension from August 1999 to May 1999.
Plaintiff then elected, as was his right under the Code of Conduct, to appeal the decision of the Judicial Hearing Board to the University’s Associate Provost, defendant Rahmeier. After meeting with plaintiff, he declined to reverse the decision of the Board. (Because of Mr. Rahmeier’s not having been informed with respect to the shortened length of the proposed suspension, a judge of this court, in denying plaintiffs motion for a preliminary injunction, ordered that the length of the suspension should be only until May 1999.) Plaintiff resumed attending classes in the summer of 1999.
It is true that a student does have limited due process rights, and a student disciplinary procedure must comport with general notions of fundamental fairness. Gorman v. University of Rhode Island, 837 F.2d 12 (1st Cir. 1988), citing Goss v. Lopez, 419 U.S. 565, 574-75 (1975). While due process and fundamental fairness do require some kind of notice and some kind of hearing, “due process which may be said to mean fair procedure, is not a fixed or rigid concept, but, rather, is a flexible standard which varies depending on the nature of the interest affected, and the circumstances of the deprivation.” Gorman, supra, at 12. “Generally, in examining administrative proceedings, the presumption [of fairness in conducting the disciplinary proceeding] favors administrators, and the burden is upon the party challenging the action to produce evidence sufficient to rebut the presumption." Gorman, supra at 15; see also Schaer v. Brandeis University, 432 Mass. 474 (2000) (university is as a matter of basic fairness not required to abide by the rules of evidence).
Plaintiffs primary contention that he was denied fundamental fairness arises out of the fact that his counsel was barred from the hearing. Here, plaintiff was specifically informed prior to the hearing that no criminal charges were contemplated. Accordingly, when the University barred his attorney from attending the hearing, it was not in contravention of its own judicial conduct code which permitted attendance by a student’s attorney only if a criminal charge was likely.
Nor is there any constitutional right to have counsel present at a student disciplinary proceeding, unless the student is also facing criminal charges arising out of the same conduct. Gorman, supra at 16 (and cases cited therein); Coveney v. President and Trustees of College of Holy Cross, 388 Mass. 16, 22 (1983) (in context of a private institution, there is no right to have an attorney present at a student disciplinary hearing). Similarly, it was permissible for the University to bar his attorney from attending the appellate hearing which plaintiff had before Mr. Rahmeier.
Plaintiff further contended at the hearing that he had been deprived of his right, provided by the disciplinary code, to have witnesses attend the hearing and be subject to questioning. It is true that such a right may be implicit in the “procedures,” which do provide that “both parties may request a submission of written, factual accounts by witnesses and may request that the authors appear at the hearing... the accused student may hear and question all witnesses . ..” It is also true that, prior to the hearing, plaintiffs counsel requested that written, factual accounts by any and all witnesses be produced at the hearing, and that “witnesses who produced written, factual accounts be available at the hearing for questioning ...” One such letter which was presented at the hearing, was from Keyne M. Barry, resident director of the dormitory, *391 wherein she stated that the plaintiff and another student were investigated by campus police “because they were suspects in a credit card scam that had taken place on campus during the previous few weeks.” The letter also stated that, earlier in the year, plaintiff had been was involved in a fight at a nearby convenience store, and that a photocopy of the student roster was being kept by plaintiff and used by another student in a credit card scam. While it thus appears that the non-attendance of Keyne Barry at the hearing was in contravention of the University’s procedures, there is no evidence that her statements were materially prejudicial to the plaintiff. The plaintiff (at least until the time of the hearing, when he changed his story) had admitted all the essential elements of the charge against him. In view of his having previously been placed on probation, moreover, the University cannot be viewed as having acted harshly or unfairly in sanctioning him with a suspension for his new violation during his probationary period. Accordingly, there is no indication in the record that he was materially prejudiced by the failure of the witness to appear at the hearing and to subject herself to his questioning. Moreover, when he was asked at his deposition whether he had indicated at the hearing that he would like to have the opportunity to question Barry, he admitted that he had not, and that he “didn’t know” how it would have helped him had she been present for questioning. (Tr. 80-82). He has thus failed to demonstrate that any departure from the rules of procedure resulted in any prejudice to him.
Finally, even had any evidence been submitted to raise an issue of material fact as to whether the plaintiff had been deprived of a fair hearing, there have been no facts asserted to raise an issue of material fact as to whether any of the defendants intentionally deprived the plaintiff of any clearly established constitutional rights of which they should reasonably have been aware. See Hagarty v. Somerset County, 53 F.3d 1367, 1372-73 (1994); Swain v. Spinney, 117 F.3d 1, 9-10 (1st Cir. 1997); Soto v. Flores, 103 F.3d 1056, 1064-65 (1st Cir. 1997). Plaintiffs suspension has long since expired, and only money damages are now sought. On the basis of this record, there is no substantial likelihood that plaintiff can elicit any facts which would provide a basis for monetary recovery under §1983 against any of the defendants.
ORDER
Accordingly, defendants’ motions for summary judgment are ALLOWED, and plaintiffs cross-motion for summary judgment is DENIED. Final judgment shall enter in favor of each of the defendants.