SHEILA SULLIVAN *VS.* THE BOSTON ARCHITECTURAL
CENTER, INC.

No. 01-P-246.

Suffolk. December 18, 2002. - April 11, 2003.

Present: BROWN, SMITH, & KAFKER, JJ.

*Contract,* Private college, Implied covenant of good faith and fair dealing,
Emotional distress. *Education,* Private colleges and universities. *Damages,*
Emotional distress. *Emotional Distress.*

In a civil action brought by a student against her school for alleged breach of
contract and of the implied covenant of good faith and fair dealing, arising
out of her difficulties in completing and receiving credit for one of her
courses, the judge properly entered summary judgment in favor of the
school, where, to the extent that the school's policies and procedures
generated any reasonable expectations on the part of the student, they had
been satisfied, and the student had no reasonable expectation that the
school would not follow its own procedures and instead adopt a different
approach that the student preferred [774-775]; moreover, because no breach
of contract occurred, the student's claim for emotional distress damages
arising out of the school's conduct failed [775].

CIVIL ACTION commenced in the Superior Court Department on
August 2, 1996.

The case was heard by *Julian T. Houston,* J., on a motion for
summary judgment.

*Robert O. Berger, III,* for the plaintiff.

*Kay H. Hodge* for the defendant.

KAFKER, J. An architecture student's difficulties completing
and receiving credit for a design studio course led her to bring a
breach of contract action against her school. As we conclude
that the educational institution undisputedly followed its own
published procedures in addressing the matter, we affirm the
Superior Court's decision entering summary judgment for the
school.

*Facts and school policies and procedures.* We briefly summarize the material, undisputed facts. The plaintiff, Sheila Sullivan, was a student at the Boston Architectural Center, Inc. (BAC). The BAC is a nonprofit educational institution offering accredited undergraduate and graduate architecture and interior design degree programs. The BAC has an open admissions policy and a 300-member volunteer faculty. The BAC's policies and procedures are set out in its "BAC Catalog," "Student Handbook" and "Academic Resources Handbook" (collectively referred to as the BAC's "policies and procedures").

In 1990, the plaintiff took the "Piatt Studio B" course. She did not complete the course work and received a grade of "incomplete," which converted automatically into a "repeat for cause" after six weeks in accordance with the BAC's policies and procedures. Her grade point average suffered because a "repeat for cause" was the grade point equivalent of a zero. The school's policies and procedures required a student to maintain an overall grade point average (GPA) of 2.5, and a grade point average in studio courses (STGPA) of 2.5, to remain in good standing; otherwise, the student would be placed on academic probation. The plaintiff's overall GPA dropped below 2.5 and her STGPA dropped to 1.15 when the zero grade she received in the Piatt Studio B course was included. She claims the course was too difficult and the professor was inaccessible after it ended.[1] Two other students who received incompletes in the class did manage to complete the work and receive credit. Out of the eight people originally in the class, five eventually completed the work and three, including the plaintiff, did not.[2]

The BAC's policies and procedures lay out two options for addressing the problem of an incomplete that has been converted into a "repeat for cause." The student could retake the studio course or take an equivalent course. If the student satisfactorily completed the substitute course, she could submit a "Studio Change Request Form," and the original grade could be converted into a "no credit," which would not affect the student's grade point averages.

[1]The Piatt Studio B course was taught by two professors. The plaintiff apparently did not attempt to contact the other professor.

[2]It is undisputed that incompletes are not at all uncommon at the school.

The plaintiff did take and achieve satisfactory grades in other design courses that met this requirement, including the "Shrier Studio" course. She took the Shrier Studio course the semester after she failed to complete the Piatt Studio B course. Had she submitted a Studio Change Request Form, she could have immediately converted the Piatt Studio B grade into a "no credit," and substituted the Shrier Studio grade for the zero on her record. Instead she continued to seek credit for the Piatt Studio B course. Eventually, in July, 1995, she followed the school's procedures and successfully transformed the Piatt Studio B grade into a "no credit"; the zero she had received for her "repeat for cause" was removed and not included in her GPA or STGPA. The passing grade she received in another studio course, the "Herman Studio," which she took in the 1993-1994 semester, was allowed to stand in its place. With this recalculation, her STGPA rose above 2.5 and she finally was taken off of her long-standing academic probation. She has not, however, graduated, and was not enrolled at BAC at the time of her appeal.

The policies and procedures also allow students to petition to the BAC's appeals committee, which could convert an "I," incomplete, grade into a "W," withdrawn status, in the case of the student's serious illness or other extenuating circumstances. The plaintiff successfully used this process to withdraw from two other classes in which she had received an incomplete. In regard to the Piatt Studio B course, she petitioned the appeals committee in September, 1994, for an "annulment," a procedure not provided in any of the relevant documents. Her request was denied. The appeals committee concluded, "An initial review of the completion statistics and other evidence pertaining to the Piatt studio suggests that there do not appear to be grounds for an annulment."[3] The school's policies and procedures state that all decisions of the appeals committee are final.

According to the BAC's policies and procedures, "[s]tudents are required to be thoroughly familiar with and to abide by the [BAC] regulations as stated in the Catalog and Student Handbook." Nonetheless, the same policies and procedures

---

[3]The appeals committee stated that the plaintiff could pursue the matter further by supplying the committee with certain substantiating documents. The plaintiff submitted no further documentation on the matter.

include the express disclaimer that they are "not, and should not be construed as, a contract or part of any contract."

*Discussion.* Without referencing specific provisions in the policies and procedures, the plaintiff alleges breach of contract and of the implied covenant of good faith and fair dealing, based on her difficulties completing and receiving credit for the studio course.[4] We conclude that to the extent there are any commitments in the BAC policies and procedures that generate any "reasonable expectation[s]" on the part of the plaintiff, they have been satisfied. *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 478 (2000). The undisputed facts establish the defendant's right to summary judgment.

Her claims involve, at least in part, core academic issues: what is acceptable performance in class by a student and how to resolve a dispute arising out of the failure to perform or complete work that a professor has deemed required for a passing grade. See generally *id.* at 482 ("[c]ourts are 'chary about interfering with academic and disciplinary decisions made by private colleges and universities' "), quoting from *Schaer* v. *Brandeis Univ.*, 48 Mass. App. Ct. 23, 26 (1999). We therefore do not second-guess or supplement the processes developed by the BAC, which address and seek to resolve important and at times conflicting concerns of students, teachers and administrators. See, e.g., *Holert* v. *University of Chicago*, 751 F. Supp. 1294, 1301 (N.D. Ill. 1990) (because relationship between student and university was "strictly contractual in nature, [student] was entitled only to those procedural safeguards that the [u]niversity agreed to provide").

The policies and procedures contained well-defined processes for addressing the plaintiff's grievance. The defendant made these procedures available to the plaintiff and applied them as articulated. See *Schaer* v. *Brandeis Univ.*, 432 Mass. at 481. See also *Gill* v. *Franklin Pierce Law Center*, 899 F. Supp. 850,

---

[4]In her complaint's prayer for relief, the plaintiff seeks the redactions of the Piatt Studio B grade and all probation notations from her academic transcript; a letter of justification to enable her continued receipt of Federal student financial aid; a letter on BAC letterhead explaining the contribution of the Piatt Studio B course to her delayed academic progress; and damages for breach, including injury to future academic and career prospects and infliction of emotional distress.

856 (D.N.H. 1995) (summary judgment on contract claim allowed where "documents establish that [school] followed the process set forth in the relevant [a]cademic [r]ules and [r]egulations"). Once she followed the procedures, the course credit and probation status problems flowing from her failure to complete the Piatt Studio B course were expeditiously resolved. The delays occurred when the plaintiff sought to resolve her disagreement with the BAC on her own terms. We conclude that she had no "reasonable expectation" that the BAC would not follow its own procedures developed to resolve such disputes but would instead agree to adopt a different approach that the student preferred. *Schaer* v. *Brandeis Univ.*, *supra* at 478.[5]

The plaintiff also claims that she was entitled to emotional distress damages arising out of the defendant's conduct. On appeal, she characterizes these damages as those that may be awarded where "the breach of contract is of a nature particularly likely to produce emotional distress." *St. Charles* v. *Kender*, 38 Mass. App. Ct. 155, 159 (1995). As we conclude that there was no breach, this claim fails.[6]

*Judgment affirmed.*

---

[5]As part of her dispute over course credit for the Piatt Studio B course, the plaintiff alludes more generally to BAC responsibility for what she considers the undue difficulty of the studio and the unavailability of one of the two professors once the course had concluded. She does so without referencing any specific, controlling provisions in the policies and procedures limiting BAC discretion regarding these core academic matters. We conclude that the course credit processes at the BAC have been developed by the institution to handle just this type of student-teacher grievance, and we decline to interject the court further into academic decision-making. See *Schaer* v. *Brandeis Univ.*, 432 Mass. at 482. See also *Regents of the Univ. of Mich.* v. *Ewing*, 474 U.S. 214, 225 n.11 (1985), quoting from *Board of Curators, Univ. of Mo.* v. *Horowitz*, 435 U.S. 78, 96 n.6 (1978) (Powell, J., concurring) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation").

[6]In her complaint, the plaintiff also made a separate claim for negligent infliction of emotional distress. We conclude that this claim, which is not referenced on appeal, has been waived. Regardless, it is without merit.