van Gestel, J.
The Court addresses here a motion by defendants Exelon Mystic Development, LLC, Ex-elon Fore River Development, LLC, and Exelon Boston Generating, LLC (the “Exelon defendants”), to dismiss the first amended complaint.[2]
BACKGROUND
This case involves a complex series of construction contracts, guarantee agreements, letters of credit, and other negotiated instruments concerning the construction of two electric generating facilities in Everett, Massachusetts (the “Mystic Facility”), and in Weymouth, Massachusetts (the “Fore River Facility”). Through its first amended complaint, Raytheon Company (“Raytheon”) seeks various forms of equitable and other relief concerning its obligations under the construction contracts and the guarantee agreements, with regard to certain letters of credit, and for certain assurances of compensation.
The Exelon defendants claim that the complaint should be dismissed in favor of an earlier-filed action in New York and because the first amended complaint fails to state valid claims for relief.
On December 31, 1999, Raytheon Engineers & Constructors, Inc. (“RE&C”), then a wholly owned subsidiary of Raytheon, entered into an agreement (the “Mystic EPC Agreement”) with Sithe Mystic Development, LLC (“Sithe Mystic”).[3] Pursuant to the Mystic EPC Agreement, RE&C was to design, engineer, procure, start up, test, deliver, and warrant the Mystic Facility. On May 8, 2000, RE&C entered into a similar agreement (the “Fore River EPC Agreement”) with Sithe Fore River Development, LLC (“Sithe Fore River”) for construction of the Fore River Facility. Raytheon, the parent of RE&C, signed Guarantee Agreements for each Facility, guaranteeing the obligations of its subsidiary, RE&C, under those Agreements.
Sithe Mystic and Sithe Fore River are, respectively, the predecessors to Exelon Mystic and Exelon Fore River.
Each of the EPC Agreements and the Guarantee Agreements dictates that New York law should apply. Further, the Agreements provide that the parties thereto submitted to the non-exclusive jurisdiction of the New York courts, and waived any objections to improper venue or inconvenience in New York.
During the time of construction of both Facilities, RE&C was acquired by Washington Group International, Inc. (“WGI”). In March 2001, WGI stopped performing under its agreements and subsequently declared Chapter 11 bankruptcy.
After WGI stopped performing, also in March 2001, Sithe Mystic and Sithe Fore River filed an action in New York Supreme Court (the “New York Action”) seeking to compel Raytheon to honor its guarantees. See Sithe Fore River Development, LLC et al. v. Raytheon Company, Supreme Court, New York County, Index No. 601206/01. This case is being handled by Justice Charles E. Ramos. In the New York litigation, Raytheon entered into an agreement, on the record, to perform its obligations under the EPC and Guarantee Agreements. The New York Court entered the following order: “(T]his Court reserves jurisdiction to determine whether in light of the for[e]going, defendant, Raytheon Corporation, is performing the guaranty obligations in accordance with the guaranty agreements.”
The New York Action is still pending because no final judgment has yet been entered in that case.
Further, recently there has been filed another action in the New York Supreme Court, which is also pending before Justice Ramos. The new action is captioned Mitsubishi Heavy Industries, Ltd. et al v. Exelon Mystic Development, LLC, Supreme Court, New York County, Index No. 603104/03 (the “Mitsubishi Action”). In the Mitsubishi Action, Mitsubishi claims monies due from the owners of the two electric generating plants in issue for work performed by Mitsubishi as a sub-contractor on the two projects. The Exelon entities assert that Raytheon, as guarantor of the obligations of the former general contractor, is the *111 party that owes any monies that may be due to Mitsubishi.
The Exelon defendants in the Mitsubishi Action have moved before Judge Ramos to join Raytheon as a necessary party to that case and to consolidate it with the original New York Action mentioned above.
As recently as October 22, 2003, in the Mitsubishi Action, Judge Ramos held a hearing regarding issues relating to, among other things, the joining of Raytheon as a party in that case.[4] A further hearing was scheduled for November 21, 2003. This Court is not aware of the results of that hearing, or even if it was held.
Raytheon’s claims in this case arise out of public announcements first made by or on behalf of Exelon Mystic and Exelon Fore River on July 29, 2003, that the Mystic Facility and the Fore River Facility are being turned over to the group of lenders for the projects, in whole or partial satisfaction of a $1.1 billion debt on which they are in default. Since that announcement was made, Raytheon has continued to perform under its guarantees, allegedly expending approximately $350,000 per day.
Raytheon has requested the Exelon defendants to provide assurances that, despite their planned abandonment of the Facilities, they will honor their payment obligations to Raytheon, including a refund of approximately $38 million in pre-paid, contingent liquidated damages alleged to be due and owing to Raytheon.
Raytheon claims that it is entitled, under New York law, to demand adequate assurance of future performance by the Exelon defendants and that, in the absence thereof, Raytheon is entitled to suspend or terminate performance under its guarantees. Raytheon also contends that, as evidenced by the Exelon defendants’ public announcements and their failure to respond to Raytheon’s demands for adequate assurances of future performance, the Exelon defendants are insolvent, which also enables Raytheon to suspend or terminate performance under its guarantees. Still further, Raytheon alleges that the Exelon defendants have defaulted on certain payment obligations to it, thereby jeopardizing Raytheon’s ability to be paid for its performance.
Section 33.1.1 of the EPC Agreements requires the parties to engage in executive-level negotiations prior to arbitrating or litigating any dispute under the contracts and permits litigation only for claims in excess of $25 million (or claims for personal injury or property damage). There are other dispute resolution and remedial provisions in the EPC Agreements which address nearly every disagreement between the parties. The Exelon defendants claim that two remedial provisions in particular are directly implicated by the first amended complaint.
First, the EPC Agreements contain a standard “retainage” clause providing that Exelon Mystic and Exelon Fore River may retain 10% of each milestone payment to Raytheon as security for Raytheon’s performance. In lieu of actually retaining 10% of each payment, the Agreements give Raytheon the option “to deliver to Owner an irrevocable bank letter of credit.” The Owner is then entitled to draw on the letter of credit “without right of objection” by Raytheon to complete the work. During construction at the Mystic Facility, Raytheon opted to provide three retainage letters of credit in lieu of the 10% retainage amounts. Raytheon, in this suit, seeks to have the Court enjoin all draws on those letters of credit (and on an additional letter of credit for the Fore River Facility).
Second, Raytheon asserts claims relating to its alleged right to receive a refund under the EPC Agreements’ liquidated damages provisions. Raytheon sent an August 6, 2003, letter to the Exelon defendants, demanding adequate assurance of their future performance. The Exelon defendants contend that Raytheon was late in performing under the Agreements and that such late performance is an automatic, non-curable default under the Agreements.
DISCUSSION
Because of the dispositive effect on Raytheon’s claims, the Court has addressed only the Exelon defendants’ motion to dismiss. There are two parts to the motion. One part relates to the New York Action and cites to Mass.R.Civ.P. Rules 12(b)(3), 12(b)(9) and G.L.c. 223A, Sec. 5. The other partis a more traditional Rule 12(b)(6) argument that the first amended complaint fails to state a claim. The Court will assess the arguments in the order stated.
The Improper Venue, Prior Pending Action, and Interests of Justice Contentions
Rule 12(b)(3) permits dismissal for improper venue. Rule 12(b)(9) permits dismissal when there is pending “a prior action in a court of the Commonwealth." G.L.c. 223A, Sec. 5, is the statutory version of the forum non conveniens doctrine that permits dismissal or a stay “when the court finds that in the interest of substantial justice the action should be heard in another forum.”
In the absence of some agreement by the parties, there is nothing in the venue provisions of either Massachusetts or New York law that would make Massachusetts an improper venue to litigate contractual disputes over the construction of two Massachusetts-located electric generating plants between a Massachusetts-based company responsible for the construction and the owners of those two Massachusetts facilities. Indeed, under ordinary circumstances it would be hard to imagine a forum more appropriate than Massachusetts.
The EPC Agreements and the Guarantee Agreements in issue here each contain contractual language relating to venue.
Before examining the language chosen by the contracting parties, it seems worthwhile to note the *112 parties’ state of sophistication. To suggest that those involved in drafting and executing the Agreements here are other than extremely sophisticated would be a blunder of major proportion by this Court. These were major projects, involving millions — perhaps billions — of dollars. The contracting parties are substantial corporations, well represented by competent counsel. A swarm of sophisticated lenders is involved. A reading of the Agreements themselves, with this background, makes clear that this Court ought not attempt to be smarter than the parties and ought instead to hold them as close to the words they chose as possible. “It is not the role of the [C]ourt to alter the parties’ contractual agreement.” Rogaris v. Albert, 431 Mass. 833, 835 (2000).
The language relating to venue states that the contracting parties submit “to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York and of any New York state court sitting in New York City for the purposes of all legal proceedings arising out of or relating to [the Agreements] or the transactions contemplated thereby.” (Emphasis added.) Further, each party “irrevocably waives, to the fullest extent permitted by applicable law, any objection that [it] may now or hereafter have to the laying of the venue of any such proceeding brought in such a [New York] court [and any claim that such a proceeding brought in such court] has been brought in an inconvenient forum.”
This language does not limit the venue of any action brought under the Agreements to the New York courts mentioned. Rather, it permits actions to be brought in courts in New York and invalidates any objection thereto or any claim that such courts would be an inconvenient forum. There is nothing, however, in the language that makes the New York courts named the exclusive courts in which such actions may be brought. Specifically, the parties chose the word “nonexclusive” when suggesting that New York courts would — not must — be an acceptable forum. They did not, however, say that any other court would be inappropriate.
There may, therefore, be no basis to dismiss on Rule 12(b)(3) grounds.
Rule 12(b) (9) clearly provides no basis for dismissal. No Federal or state court in New York is “a court of the Commonwealth.” As such, Rule 12(b)(9) has no application. See Doe v. Governor, 381 Mass. 702, 706 (1980).
Turning next to G.L.c. 223A, Sec. 5, the Court observes that it has broad discretion in acting upon a motion to dismiss for forum non conveniens type reasons. W.R. Grace & Co. v. Hartford Accident and Indemnity Co., 407 Mass. 572, 577 (1990) (“A decision whether to dismiss an action under the doctrine of forum non conveniens involves the discretion of the motion judge, cannot be made by applying a universal formula, and depends greatly on the specific facts of the proceeding before the court”); Joly v. Albert Larocque Lumber, Ltd., 397 Mass. 43, 44 (1986). The doctrine of forum non conveniens must be applied with caution. Joly, supra, 397 Mass, at 44.
In the present instance, few, if any, of the many factors that are considered to justify dismissing a case on inconvenient forum grounds exist. See, e.g., Green v. Manhattanville College, 40 Mass.App.Ct. 76, 79-80 (1996). The witnesses, the sites in contention and the parties are, for the most part, all in Massachusetts. What is compelling, however, is: the pendency of the New York Action before Justice Ramos; the recent filing of the Mitsubishi Action, also before Justice Ramos, and his consideration of the motion to join Raytheon therein; and, the contractual requirement that New York law applies.
Justice Ramos has before him the first filed New York Action that involves Raytheon’s obligations as a guarantor of the original general contractor for the construction of the Mystic Facility and the Fore River Facility, over which he has retained jurisdiction. Justice Ramos also has before him the recently filed Mitsubishi Action that involves the claims of a major subcontractor of the Mystic Facility and the Fore River Facility for compensation. Whether that compensation is due from the owners or from Raytheon as guarantor of the general contractor will be a major issue in the Mitsubishi Action. Justice Ramos is also considering whether Raytheon should be joined as a party to the Mitsubishi Action and whether the New York Action and the Mitsubishi Action should be consolidated before him. And all of this is, by the contractual language, to be governed by New York law, with which Justice Ramos deals on a daily basis.
This Court, in Massachusetts, by contrast, only has before it an action by Raytheon against the owners of the Mystic Facility and the Fore River Facility over Raytheon’s rights under the contracts.
In handling this case, this Court must apply New York law. It is fully capable of doing so. Further, this Court’s rulings can only be assessed by the Massachusetts Appeals Court and the Massachusetts Supreme Judicial Court. The latter two appellate courts are, also, fully capable of assaying and applying New York law. But, what neither this Court nor the Massachusetts appellate courts may properly do is expand upon, change or modify the particular New York law that may apply to whatever the facts of this dispute turn out to be. The latter is the province of, initially, Justice Ramos and, much more appropriately, those New York appellate courts that review his rulings.
Considerations of judicial economy in two busy courts, each well able to handle this case, warrant serious consideration. It is not in any way economic for the parties, or the courts of New York and Massachusetts, each to be grappling with and deciding issues involving the same complex projects and contracts. And, when the overlay of New York law is *113 required, it seems much more appropriate for the proceedings to be conducted by a New York judge who can interpret his own state’s laws and whose rulings New York’s appellate courts can review
The Rule 12(b)(6) Aspects
There is no necessity for this Court to consider the Rule 12(b)(6) arguments on the motion to dismiss, and no implications from this decision should be applied thereto.
ORDER
For the foregoing reasons, the Exelon Defendants’ Motion to Dismiss Plaintiffs First Amended Complaint (Paper #62) is ALLOWED. Judgment of dismissal is, however, stayed until December 22, 2003. The stay in entry of final judgment is to enable Raytheon Company to proceed, if it chooses, in the New York Supreme Court, New York County, and to seek whatever injunctive relief it may choose before any judgment of dismissal here vacates any outstanding orders.

 There also is pending, and has been argued, a motion for partial summary judgment by Raytheon. Given the conclusions that follow, the Raytheon motion will not be addressed here.

 The facts recited are taken from the first amended complaint and from the agreements themselves, provided to the Court through affidavits. In evaluating a rule 12 motion, the Court may “take into consideration ‘the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.’ ” Schaer v. Brandeis University, 432 Mass. 474, 477 (2000).

 Justice Ramos has indicated his awareness of this case and has expressed his intent not to step on this Court’s robe in this proceeding. This Court expresses precisely the same sentiment regarding the New York proceedings.