Agostini, John A., J.
The SLC’s arguments for reconsideration essentially repeat those set out in its motion to dismiss.[2] The following is not intended to alter my ruling on that motion, but only to respond to certain aspects of the motion for reconsideration meriting additional comments.

1. Independence Standard

The SLC first asserts that the Court has applied the wrong independence standard and that “none of the traditional indicia of lack of independence apply to Mr. Daly.” The SLC refers to the lack of evidence that Daly had a personal financial interest in the challenged transactions and the lack of direct evidence that Daly’s social or business relationships with other directors caused him to make corporate decisions without being adequately informed. The SLC advocates an independence assessment restricted to the question of whether or not Daly’s relationships with Smith, other directors, management, or the corporation show their dominion or control over Daly.[3] Consistent with that position, the SLC also wants the Court to disregard evidence permitting an inference that Daly did not exercise valid, informed business judgment in making decisions on relevant corporate transactions and in recommending to the Board, as a member of the 2002 Special Committee, the rejection of Blake’s first demand letter.
Without the benefit of Massachusetts appellate case law elucidating the standard for independence under G.L.c. 156D, §7.44, and cognizant that this statute articulates new terms and procedures for disposing of motions to dismiss derivative actions, the Court looks for guidance on this point to other courts’ interpretations of analogous statutes. Prior to the enactment of G.L.c. 156D, §§7.42 & 7.44, the independence inquiry was triggered by motions to dismiss brought in one of two general procedural postures: (1) where the plaintiff failed to make pre-suit demand (demand futility cases), and (2) where the plaintiff made pre-suit demand but directors or a Special Litigation Committee (SLC) refused the demand (demand refused cases).[4] To date, it appears that no courts have decided whether the substantive standard of independence in an SLC case (or other iype of demand refused case) differs from that in a demand futility case. See Beam v. Stewart, 845 A.2d 1040, 1055 (Del. 2004). In either scenario, “(¡Independence is a fact-specific determination made in the context of a particular case.” Id. at 1049 (demand futility case). See also In re Oracle Corporation Derivative Litigation, 824 A.2d 917, 941 (Del.Ch. 2003) (Delaware approach to inquiry of SLC’s independence is contextual and takes into account all the circumstances).
Courts conducting an independence analysis of SLC members employ the “totality of the circumstances” test, which calls for an examination of not just the SLC members’ relationships with other directors and the corporation, but also factors including but not limited to the size of the SLC and whether the manner in which the SLC proceeded was bound to be biased in favor of terminating the litigation.[5] See, e.g., Johnson v. Hui, 811 F.Sup. 479, 486 (N.D.Cal. 1991); In re Oracle Securities Litigation, 852 F.Sup. 1437, 1441 (N.D.Cal. 1994) (“Whether a special litigation committee’s decision to terminate derivative litigation is independent or not depends upon the ‘totalily of the circumstances’ ”); Strougo v. Bassini 112 F.Sup.2d 355, 362 (S.D.N.Y. 2000); In re Oracle Corporation Derivative Litigation, 824 A.2d at 941 (Delaware courts test independence of SLC by taking into account all the circumstances). Nothing in the case law relied upon by the SLC or elsewhere supports the myopic argument that a director’s independence as an SLC member can or should be gauged without considering among the totality of circumstances his or her record of using or failing to use informed business judgment.[6]
More importantly, regardless of whether the independence inquiry occurs in the SLC context or the demand futility context,
At bottom, the question of independence turns on whether a director is, for any substantial reason, incapable of making a decision with only the best interests of the corporation in mind. That is, the Supreme Court cases ultimately focus on impartiality and objectivity.
In re Oracle Corp. Derivative Litigation, 824 A.2d at 938 (emphasis added; noting that test of SLC’s independence is “wholly consistent with the teaching of Aron-son”). The Aronson court instructed that, “Independence means that a director’s decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences.” Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1984), overruled on other grounds, Brehm v. Eisner, 746 A.2d 244 (Del. 2000). See also In re Veeco Instru *612 merits, Inc. Securities Litigation, 2006 WL 1650656, *5 (S.D.N.Y. 2006) (same, in demand futility case). Therefore, the Court declines to confine the assessment of Daly’s independence to the identification of specific relationships directly and overtly demonstrating undue influence upon Daly, and instead, in the unusual circumstances of this case, considers among the pertinent “totality of circumstances” factors which can negate or reveal evidence bearing on the ultimate independence question of whether Daly was capable of basing his decisions on the corporate merits.
Thus, as with the Aronson test, under the Rales test, directors’ independence can be implicated by particularly alleging that the directors’ execution of their duties is unduly influenced, manifesting “a direction of corporate conduct in such a way as to comport with the wishes or interests of the [person] doing the controlling.” A lack of independence also can be indicated with facts that show that the majority is “beholden to" directors who would be liable or for other reasons is unable to consider a demand on its merits, for directors’ discretion must be free from the influence of other interested persons. Shoen v. SAC Holding Corp., 2006 WL 1916868, *9 (Nev. July 13, 2006) (emphasis added).
There is ample evidence that Daly did not make informed decisions or exercise informed business judgment with respect to several significant transactions and Board decisions directly relevant to Blake’s claims, even after sitting on the 2002 Special Committee specifically charged with investigating them. The record permits an inference that Daly remained so poorly informed that his recommendation to the Board, as a member of the 2002 Special Committee, and his decisions as a member of the Board and the Audit Committee in those matters were not based upon their corporate merits, and therefore were not objective but based upon extraneous considerations. Cf. In re Enivid, Inc., 2006 WL 1933807, *12 (Bankr.D.Mass., July 12, 2006) (concluding that it was reasonable to infer that directors lacked ability to consider transactions objectively because CEO and director withheld pertinent information from them).
Against that backdrop, Daly’s ability as a member of the SLC to evaluate impartially the claims in Blake’s most recently amended complaint is even more dubious. Blake asserts that Daly and other directors breached their fiduciary duty by “ignoring and condoning improper actions between Friendly, Smith and TRC, and by exercising their authority as directors to condone and cover up improper conduct,” such as in the conduct of the 2002 Special Committee and in paying aircraft costs after being told by Blake that Friendly had no obligation to pay them. These allegations of intentional misconduct can fairly be read to claim that Daly and other directors were improperly influenced by Smith, at least, in exercising their authority as directors. In light of Daly’s substantial and direct involvement in the challenged conduct and evidence that he previously failed to exercise informed business judgment in rendering decisions in these matters, as well as consideration of all the factors discussed in the decision on the motion to dismiss, I conclude that the SLC has not shown that Daly was impartial or able to consider the plaintiffs demand on its merits. Daly’s deposition testimony, when viewed in the totality of circumstances, supports an inference that Daly was unduly influenced by Smith, if not also by certain other individuals in Friendly’s management and employ, due to “personal or other relationships.” See In re Oracle Corporation Derivative Litigation, 824 A.2d at 939. This is more than adequate to create a reasonable doubt about Daly’s independence. See In re Enivid, Inc., 2006 WL 1933807, *13 (Bankr.D.Mass., July 12, 2006) (director’s repeated declarations of loyalty and deference to another director and officer [Filipowski], his failure to challenge publicly Filipowski’s judgment in spite of disagreements between the two, indicated that director was dominated by Filipowski and permitted inference that director lacked independence in his duties). In sum, the SLC has failed to meet its burden of demonstrating Daly’s independence. The same independence standard set forth in my decision and discussed further here applies to Ezzes, Ledsinger, and Burton.[7]

2. Personal Liability

In connection with the independence analysis, the SLC also takes issue with the conclusion that, “Because Daly was substantially and personally involved in the conduct challenged by Blake he may face personal liability for breach of fiduciary duty as alleged in the proposed complaint... In all these circumstances [described in the previous pages in that decision], it is far from clear that Daly was [independent].” (Emphasis added.) First, at the risk of belaboring the point, the determination that the SLC had failed to meet its burden of showing Daly’s independence does not rise and fall on one or two factors, but is based upon a consideration of the totality of the circumstances in this unique case. The factors weighing against Daly’s independence, even excluding, for the sake of argument only, questions about his personal liability, are sufficient to generate reasonable doubts about Daly’s independence to defeat the SLC’s motion.
The SLC is correct in pointing out that it is not enough that Daly may face personal liability, and that to qualify as a factor undermining independence, a director must face a substantial likelihood of liability. See Aronson v. Lewis, 473 A.2d at 815. The question of whether Daly faces a mere threat of liability or a substantial likelihood of liability is a close one, and calls for a more detailed look at the particularized allegations and materials pertinent to claims that Daly breached his fiduciary duty.
The fiduciary duty encompasses the duties of care (or attention), loyalty, and good faith. See In re Abbott *613 Laboratories Derivative Shareholders Litigation, 325 F.3d 795, 808 (7th Cir. 2003). The duty of care “consists of an obligation to act on an informed basis.” Shoen v. SAC Holding Corp., 2006 WL 1916868, *5 (Nev. July 13, 2006); In re Caremark Intern., Inc Derivative Litigation, 698 A.2d 959, 967, 968 (1996) (“Where a director in fact exercises a good faith effort to be informed and to exercise appropriate judgment, he or she should be deemed to satisfy fully the duly of attention”).
Section 8.30 . . . defines the general standard of conduct for directors ... by focusing on the manner in which the director performs his duties, not the correctness of his decisions, and by emphasizing the decision-making process, not the decision itself ... A director is not liable for injury or damage caused by his decision ... if, in performing his duties he met the requirements of §8.30.
Introduction to Comments to G.L.c. 156D, §8.30. See also In re Enivid, Inc., 2006 WL 1933807, *15 (Bankr. D.Mass. July 12, 2006) (whether court believes director made substantively wrong, stupid or even egregious decision “provides no ground for director liability, so long as the court determines that the process employed was either rational or employed in a good faith effort to advance corporate interests”).
To meet the burden of showing a substantial likelihood of liability for breach of a director’s non-exculpated fiduciary duty to exercise appropriate attention, a plaintiff must show
a sustained or systematic failure of the board to exercise oversight — such as an utter failure to attempt to assure [that] a reasonable information and reporting system exists, ... or particularized facts that support an inference that the directors did possess knowledge of facts suggesting potential accounting improprieties . . . and took no action to respond to them.
In re Sonus Networks, Inc. Shareholder Derivative Litigation, 422 F.Sup.2d 281, 287 (D.Mass. 2006) (internal quotations and citations omitted). See also In re Caremark Intern, Inc. Derivative Litigation, 698 A.2d at 971. Proof of a liability-triggering breach of the duty of care has been described as
the most difficult task of all: demonstrating that the outside directors had breached their duty of care, not as a result of trying to do their job but still making mistakes of a gross nature, but because the directors’ level of indolence was so extreme that it arose to a conscious decision to take the salary of director while intentionally failing to discharge one’s fiduciary obligations.
Teachers’ Retirement System of Louisiana v. Aidinoff, 900 A.2d 654, 2006 WL 1725572 (Del.Ch. June 21, 2006). See also Guttman v. Huang, 823 A.2d 492, 506-07 (Del.Ch. 2003) (dismissing claims that directors failed to exercise oversight where plaintiff did not allege that audit committee had clear notice of serious accounting irregularities in violation of legally mandated accounting and disclosure standards yet chose to ignore them or to encourage their continuation).
The record supports an inference consistent with the plaintiffs particularized allegations in the amended complaint that Daly chose to ignore the clear “red flags” in the plaintiffs first demand letter and by crediting Parker’s patently superficial “report” to the 2002 Special Committee. Despite his appointment to the 2002 Special Committee to investigate the plaintiffs allegations of Smith’s improprieties regarding the aircraft and Illinois office, at no time during his membership on that committee or from that time until his deposition in 2004 did Daly inform himself adequately about the substance of the corporate transactions at issue. Moreover, the plaintiff alleges that Daly consciously condoned and covered up improper transactions between Smith, TRC and Friendly. (See Counts I and IV of the plaintiffs current complaint.) The plaintiff thus alleges that Daly intentionally failed to discharge his fiduciary duties with respect to a series of corporate transactions spanning several years.
These particularized allegations, on the record before me, permit a reasonable inference Daly consciously took his director’s salary while intentionally failing to discharge his fiduciary obligations, see Teachers’ Retirement System of Louisiana v. Aidinoff, 900 A.2d 654 2006 WL 1725572 (Del.Ch. June 21, 2006), and/or that he participated in part of a “sustained or systematic failure of the board to exercise oversight.” In re Sonus Networks, Inc. Shareholder Derivative Litigation, 422 F.Sup.2nd 287.
The “duty of loyalty requires the board and its directors to maintain, in good faith, the corporation’s and its shareholders’ best interests over anyone else’s interests.” Shoen v. SAC Holding Corp., 2006 WL 1916868, at *5. Although G.L.c. 156D, §8.30, does not explicitly reference the duty of loyalty, that principle is articulated in §8.30(a)(3), and requires each director to discharge his or her duties “in the manner that the director reasonably believes to be in the best interests of the corporation.”
Similarly, a director’s duty of good faith is breached where
the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary . . . intentionally fails to act in the face of a known duty to act, demonstrating conscious disregard for his duties.
In re Walt Disney Company Derivative Litigation, 2006 WL 156466, (Del. June 8, 2006). See also In re Tower Air, Inc., 416 F.3d 229, 240 (3d Cir. 2005) (directors’ alleged rubber-stamping of major capital expenditures is consistent with bad faith); In re Walt Disney Company Derivative Litigation, 825 A.2d 275, 289 (Del.Ch. 2003) (“Knowing or deliberate indifference by *614 a director to his or her duty to act faithfully and with appropriate care is conduct, in my opinion, that may not have been taken honestly and in good faith to advance the best interests of the company. Put differently, all of the alleged facts, if true, imply that the defendant directors knew that they were making material decisions without adequate information and without adequate deliberation, and that they simply did not care if the decisions caused the corporation and its stockholders to suffer injury or loss”). In contrast, even gross negligence, including a failure to inform one’s self of available material facts, without more, does not constitute a breach of the duty of good faith. In re The Walt Disney Company Derivative Litigation, 2006 WL 1562466, 1, *25 (Del. June 8, 2006).[8]
The same facts alleged by the plaintiff as described above and supported by the record persuade me that Daly faces a substantial, rather than mere, threat of liability for breach of the fiduciary duties of care, loyalty and/or good faith. This factor lends additional though not indispensable support to the ultimate conclusion that the SLC has not shown Daly’s independence.

3.The Business Judgment Rule

The SLC’s claim of entitlement to the business judgment rule is devoid of merit as it misplaces reliance upon Harhen v. Brown. Four years before G.L.c. 156D, §7.44, became law, the Harhen court wrote,
In a demand refused case, because it is presumed that a disinterested board of directors acts in good faith, . . . and because directors as a matter of business policy may refuse to bring a suit, a disinterested board of directors that has refused a plaintiffs presuit demand is entitled to the protection of the business judgment rule ... to show that directors are not entitled to the protection of the business judgment rule, a plaintiff must allege facts that challenge the board’s good faith or the reasonableness of the board’s investigation of the plaintiffs demand.
Id., 431 Mass. at 844-45 (emphasis supplied; internal citations, ellipses, and quotations omitted).
Harhen does not aid the SLC. The passage quoted above protected directors with the business judgment rule only upon the assumption that they were disinterested. See id. at 844. More relevant is that G.L.c. 156D, §7.44(c), uniquivocally directs that
[i]f a majority of the board of directors does not consist of independent directors at the time the determination by independent directors is made, the corporation shall have the burden of proving that the requirements of subsection (a) [that the SLC determined in good faith after conducting a reasonable inquiiy upon which its conclusions are based that the maintenance of a derivative proceeding is not in the best interests of the corporation] have been met.
Therefore, while this new statute articulates some new standards for ruling on motions to dismiss shareholder derivative suits, neither it nor prior case law affords interested or non-independent directors the protection of the business judgment rule. Because the SLC has not met its burden of showing that a majority of the board of directors was independent at the time the SLC was appointed or rendered its decision, the SLC’s claim to the business judgment rule’s protections is baseless. See G.L.c. 156D, §7.44.
4.The SLC Report
The SLC asks the Court to consider the newly submitted affidavits of Attorney Lori Martin and Huron’s Managing Director, Joseph Floyd, to “cure” doubts about the reasonableness or good faith of its investigation. The SLC states that it had not previously presented a “fully developed record” concerning its investigation because the plaintiff never challenged its scope, the SLC’s good faith, or took discovery of the SLC or Huron after the SLC Report was filed. Contrary to the SLC’s argument, the plaintiff did, in his opposition to the SLC’s motion to dismiss, challenge the responsiveness and thoroughness of the SLC’s investigation as reflected in its report. Regardless of the SLC’s interpretation of the plaintiffs legal strategy, G.L.c. 156D, §7.44(d), requires the corporation moving to dismiss the derivative suit to
make a written filing with the court setting forth facts to show... (2) that the independent directors made the determination in good faith after conducting a reasonable inquiiy upon which their conclusions are based.
Moreover, the two new affidavits do not alter the conclusion that the SLC has failed to meet its burden. Sworn statements that the SLC’s counsel, with the aid of others, reviewed large volumes of documents and testimonial evidence, in addition to conducting numerous interviews, does nothing to fill in the significant gaps in the SLC’s “analysis,” which failed to answer serious, longstanding questions raised by the plaintiffs demand letter and complaint, and which are not without support in the discoveiy materials. Martin’s affidavit adds nothing helpful to the SLC Report, but repeats some of the same vague, unsubstantiated conclusions appearing in the SLC Report. Floyd’s affidavit, which describes the extent of Huron’s work (reviewing thousands of pages of meeting minutes, agreements, accounting reports and supporting documents), likewise does not address the flaws in the SLC Report.

5.Request to Report Case

As noted above, the court is mindful of the judicial landscape and the pauciiy of decisions in this area of law. In balancing the rights and age of the plaintiff with the issues raised by the defendants, I am disinclined to stay this case for a lengthy period of time to allow for appellate review. Given that the Appeals Court has recently denied. Friendly’s petition pursuant to G.L.c. 231, §118,1 do not believe that the denial of the motion to dismiss “so affects *615 the merits of the controversy that the matter ought to be determined by the appeals court before any further proceedings” here. See Mass.R.Civ.P. 64(a).

ORDER

For the foregoing reasons, it is hereby ORDERED that the motion for reconsideration is DENIED.

The request for a hearing on this motion is denied.

The SLC’s version of the independence standard on a motion to dismiss by an SLC has been strongly criticized by more than one court. In Oracle Corporation Derivative Litigation, 824 A.2d 917, 937-38 (Del.Ch. 2003), the court opined,
[I]n my view, an emphasis on “domination and control” would serve only to fehshize much parroted language, at the cost of denuding the independence inquiry of its intellectual integrity... Delaware law should not be based on a reductionist view of human nature that simplifies human motivations on the lines of the least sophisticated notions of the law and economics movement.

Because G.L.c. 156D, §7.42, requires shareholders commencing a derivative proceeding to make written demand upon the corporation, the pre-suit demand independence inquiry for actions brought after July 1, 2004, no longer occurs.

The information available in considering the independence of SLC members is generally greater due to the opportunity for limited discovery, in contrast to the demand futility context in which independence analysis is (or was, by most courts) confined to the particularized allegations of the plaintiffs complaint. See Beam v. Stewart, 845 A.2d at 1955. The court in Beam noted, “As a practical matter, the procedural distinction relating to the diametrically opposed burdens [of proof on the plaintiff in a demand futility case and on the SLC in an SLC case] and the availability of discovery into independence [in the SLC context] may be outcome determinative on the issue of independence. Moreover, because the members of an SLC are vested with enormous power to seek dismissal of a derivative suit brought in against their director-colleagues in a setting where presuit demand is already excused, the Court . . . must exercise careful oversight of the bona fides of the SLC and its process.” 845 A.2d at 1955.
The comments by the Beam court regarding the burdens of proof and discovery opportunities in the two types of motions to dismiss do not reflect practices in Massachusetts in litigation predating G.L.c. 156D. In Harhen v. Brown, 431 Mass. 838 (2000), a demand refused case, the court determined whether the directors were independent based upon the sufficiency of the plaintiffs allegations in her complaint rather than upon discovery. See id. at 839, 845-46. In contrast, in another case not based upon the current statute, a trial judge considering director’s disinterestedness in a demand futility case permitted discovery, conducted an evidentiary hearing, and determined the directors’ disinterestedness on that record, while assuming, without deciding, that the directors bore the burden of proving their disinterestedness. See Demonios v. Demonios Supermarkets, Inc., 2006 WL 2057476, *3-4 (Mass.App.Ct. July 25, 2006) (this Rule 1:28 unpublished decision is not cited here as authoritative for any point of law, but merely to describe procedures used — but not scrutinized on appeal — in shareholder derivative suits not governed by the current statute).
As observed by other courts, the case law is not entirely free from ambiguity or inconsistent application. See In re Oracle Corp. Derivative Litigation, 824 A. 2d at 939 (recognizing that Delaware courts have applied independence standards inconsistently).

The language relied upon by the SLC emphasizing the relationship aspect of the independence analysis is largely derived from cases involving a motion to dismiss for failure to make demand. See, e.g., Beam v. Stewart, 845 A.2d at 1052 (in demand futility cases, court determines whether plaintiff pled facts to create a reasonable doubt as to a director’s independence by alleging facts “that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director’s stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director”). Even in demand futility cases, however, the independence standard is not limited to direct evidence of overly influential relationships, but rather recognizes the potential relevance of “other circumstances” which can impair a director’s independence. See id.; Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) (shareholder plaintiffs can only defeat a motion to dismiss for failure to make a demand by pleading with particularity facts creating a reasonable doubt that the directors are disinterested and independent, or that the challenged transaction was otherwise the product of a valid exercise of business j udgment).
The SLC cites Harhen v. Brown, 431 Mass. 838, 843 (2000), for the proposition that directors are independent if they “can exercise their business judgment in the best interests of the corporation, free from significant contraiy personal interests and apart from the domination and control of those who are alleged to have participated in wrongdoing.” This quoted passage from Harhen explains the purpose of the distinction between interested and disinterested directors based upon the definition of “interested” in the American Law Institute Principles of Corporate Governance. Id. at 842-43. Comment 1 to G.L.c. 156D, §744, explaines, “Only the word ‘independent’ has been used in §7.44(b) because it is believed that this word necessarily also includes the requirement that a person have no interest in the transaction.” Neither §7.44 or its comments suggest that the definition of an independent director is limited to the definition of “interested” in the Principles of Corporate Governance or that a director could qualify as independent if he or she were unable to exercise business judgment in the best interests of the corporation, regardless of an absence of direct evidence that specific relationships influenced the director’s decisions.

The SLC wrote in page 9 of its memorandum in support of the motion to reconsider, “There is no requirement, as the Court misunderstands, that the independent directors comprise a majority of the board. The composition of the board as a whole is relevant only to the burden of proof under the statute.” The SLC appears to have misread footnote 81 of the decision it challenges. That footnote reads in pertinent part; “Section 7.44(b)(2) requires for the proper constitution of the SLC that it be appointed by a majority vote of independent directors present at a meeting of the board of directors. It does not require that a majority of the entire board be independent in order for there to be a valid SLC. In contrast, SLC on 7.44(d), which allocates the parties' burdens regarding the reasonableness and good faith of the SLC’s inquiry, focuses upon “whether a majority of the board of directors was independent at the time of the determination by the independent directors.’ ” As noted, this footnote corrected the SLC’s argument on this issue at the oral hearing.

As acknowledged by the court in In re The Walt Disney Company Derivative Litigation, 2006 WL 1562466, 1, 24 (Del. June 8, 2006), “the duty to act in good faith ... to date is not a well-developed area of our corporate fiduciary law” and is “relatively uncharted.”