Agostini, John A., J.
I.Introduction
In this shareholder’s derivative action, the four outside director defendants have moved to dismiss the claims against them, pursuant to Mass.R.Civ.P. 12(b)(6). At issue is whether the exculpatory provision in the corporation’s restated articles of organization insulates these defendants from personal liability for money damages for breach of fiduciary duly claims. For the reasons set forth below, the motions to dismiss are allowed.
II.Procedural History
In 2002, the plaintiff, S. Prestley Blake, a 10% shareholder in and co-founder of Friendly Ice Cream Corporation (Friendly), sent a demand letter to Friendly’s Board of Directors (the Board), alleging that the Board’s chairman, Donald Smith (Smith), had engaged in improper business transactions to benefit another corporation in which Smith was heavily invested, The Restaurant Company (TRC), at the expense of Friendly. The Board appointed an investigative committee (the 2002 Special Committee) but did not side with the plaintiff, who, in January of 2003, commenced this action originally against only Friendly and Smith.
In February of 2005, the plaintiff sought to amend his complaint to add as defendants TRC and its related companies, as well as the outside directors of the Board, who were at all relevant times Steven Ezzes, Charles Ledsinger, Michael Daly, and Burton Manning.[3] In what was then the proposed amended complaint, the plaintiff alleged that the four outside directors breached their fiduciary duty to Friendly by condoning and ignoring Smith’s purportedly improper dealings to benefit his family and TRC (Count I), wasted corporate assets (Count III), and aided, abetted, and directly participated in the misappropriation of corporate assets by consciously ignoring, condoning, or covering up improper transactions by Smith and TRC after receiving actual or constructive notice of wrongdoing (Count IV). Based upon this alleged misconduct, the proposed amended complaint contained additional counts against the outside directors (and all other defendants) for unjust enrichment and seeking restitution (Count V) and a claim for declaratory judgment regarding the defendants’ purportedly improper activities, their duty to disclose and their fiduciary duty (Count VI).
I initially denied the plaintiffs motion to amend the complaint because he had not sent the Board a pre-suit demand letter as required by G.L.c. 156D, §7.42. Once he did so, the Board appointed a Special Litigation Committee (SLC) to investigate these claims. After concluding its investigation, the SLC moved to dismiss the action under G.L.c. 156D, §7.44, and the plaintiff moved for reconsideration of my earlier denial of his motion to amend the complaint. I denied the SLC’s motion to dismiss and its subsequent motion to reconsider that denial, and allowed the plaintiffs motion to amend the complaint. [Reported, sub nom, Blake v. Friendly Ice Cream Corp. at 21 Mass. L. Rptr. 131 and 21 Mass. L. Rptr. 610.) In what is captioned as the “Verified Supplemental Amended Complaint (Corrected and Updated as of May 31, 2006),” the plaintiff has built upon the formerly proposed amended complaint and has added factual allegations based upon information obtained during the limited discovery conducted in connection with the SLC’s motion to dismiss pursuant to G.L.c. 156D, §7.44.
The outside directors now move to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6), asserting that an exculpatory provision in Friendly’s restated articles of organization, as permitted by G.L.c. 156D, §2.02(b)(4), shields them from monetary damages for claims rooted in violations of the directors’ duty of due care.
III.Factual Allegations in the Complaint
The five claims against the outside directors are summarized in the complaint in several paragraphs. The basis for Count I for breach of fiduciary duty, which lays much of the foundation for the other claims against the outside directors, is set forth in paragraph 55 as follows:
Ezzes, Ledsinger, Manning and Daly violated [their] fiduciary duty by ignoring and condoning improper transactions and self-dealing between Friendly, Smith and TRC that had the effect of unjustly enriching Smith and TRC, and by exercising their authority as directors to condone and cover up improper conduct. For example (but not by way of limitation):
*175 (a) After notice of this lawsuit, the Board and Special Committee attempted to dismiss this lawsuit without conducting an independent investigation of the related party transactions with Smith and TRC.
(b) After notice of this lawsuit including the allegation that Friendly had no obligation to pay TRC for the Learjet, the Board approved airplane payments to TRC of approximately $1 million without seeking a legal opinion as to whether such payments were proper.
(c) After notice of this lawsuit, the Board rejected Mr. Blake’s offer of a $50 million loan that would reduce Friendly’s borrowing costs for an inappropriate and pretextual reason, i.e., that acceptance of such an offer would trigger substantial prepayment charges, whereas (upon information and belief) the true reasons included protecting the interests of Smith, TRC and other Board members and/or perpetuating their control of Friendly.
(d) After notice of this lawsuit, including the claims asserted in this supplemental amended complaint, the Board and a Special Litigation Committee attempted to condone Smith’s conduct and dismiss the lawsuit rather than conduct a reasonable and principled investigation with appropriate and good faith corrective action.
Other portions of the complaint expand upon these allegations. The plaintiff alleges in paragraph 45 that: Ezzes and Ledsinger served on the TRC Board for the approximate period of 1988 to 1999; Ezzes performed professional services for TRC at some unspecified time, and Ledsinger served at some unspecified time as a designated representative of an unidentified company that until approximately 1998 owned one-third to one-half of TRC’s stock; Ezzes, Ledsinger and Smith did not disclose to the 2002 Special Committee members Daly and Manning that Smith owned 70% ofTRC or that Ezzes and Ledsinger had previously served on TRC’s board; the 2002 Special Committee did not engage outside counsel, but instead relied on in-house counsel, Aaron Parker (Parker); Daly and Manning did not know that Parker had at some prior unspecified time worked as in-house counsel for TRC; Daly and Manning did not attach significance to the fact that Smith was Parker’s boss and in a position to influence Parker; Parker’s report to the 2002 Special Committee failed to disclose material facts such as that one-third of the flight records (for flights charged by TRC to Friendly) were missing, that records showed that Smith’s family members were on many of those flights charged to Friendly, that Friendly’s use of the aircraft was no more than 12%, while it paid 40-50% of its cost, and that the absence of a written agreement relieved Friendly of paying for the aircraft. The plaintiff further alleges that Smith failed to disclose material facts to the 2002 Special Committee, such as an outside audit of TRC’s use of the aircraft showing that Smith was inappropriately using the aircraft for personal matters, and that there was no formal agreement for Friendly’s payment for the aircraft costs.
Regarding the $50 million loan rejection, the plaintiff further alleges that Friendly has $175 million of publicly-owned bonds with interest at 8 3/8%, a $30 million line of credit and real estate mortgage loans of $55 million, of which $45 million has fixed rate interest of 10.16% and the remaining $10 million has variable interest rates at the LIBOR rate plus 6%. On May 19, 2004, the plaintiff offered to loan Friendly $50 million at the prime rate plus 2%, provided that Friendly would use the money to refinance high-interest debt and would enforce appropriate standards of accountability against Smith and TRC. The plaintiff alleges that the loan would have substantially reduced Friendly’s borrowing costs, yet Friendly rejected the loan stating that prepaying existing loans would cost $18 million in penalties. The plaintiff reiterated his loan offer in a slightly different (unspecified) form at Friendly’s May 2005 Annual Meeting, but the Board rejected it. At some unidentified later date, Friendly refinanced $8.5 million of the loans at interest rates substantially higher than the rates offered by Blake, “thereby contradicting its stated justification that refinancing would trigger unaffordable prepayment charges,” according to the plaintiff.
The plaintiff alleges in paragraph 50 that
Upon information and belief, Smith and the Friendly Board have engaged in conduct that is mainly intended to perpetuate their control of Friendly, even though such conduct adversely affects the value of Friendly stock. The purpose of such conduct is to promote their own selfish interests at the expense of the corporation and its stockholders and to deter investor initiatives that might increase the value of Friendly’s stock.
The crux of Count III for waste of corporate assets is set forth in paragraph 62, which states,
Smith and the Friendly Board of Directors have wasted corporate assets by using or disposing of them for purposes that have no appropriate relation to Friendly’s corporate interests. The waste includes any use of Friendly resources that has the effect of perpetuating defendants’ control of Friendly or providing benefits to defendants or their associates.
As grounds for Count IV, which is labeled, “Aiding, Abetting and Directly Participating in Misappropriation,” paragraph 65 of the complaint reads,
The TRC companies and Friendly Board of Directors have aided, abetted and directly participated in violations of fiduciary duty by Smith and other officers, directors and fiduciaries of Friendly. With respect to Friendly directors, such conduct includes exercising their authority to consciously ignore, condone or cover up the improper transac *176 tions of Smith and TRC after actual or constructive notice of the wrongdoing; or to perpetuate their control of Friendly. With respect to TRC, it includes participation in conflict of interest transactions that benefit TRC at Friendly’s expense and violate the implied covenant of good faith and honesty.
In paragraph 68, which sets forth the grounds for Count V, entitled Restitution and Unjust Enrichment the plaintiff alleges that
Smith, the TRC companies, and some of the Friendly directors or members of their families have been unjustly enriched, directly or indirectly, by the inequitable conduct described above. In addition, Smith and the defendants have improperly caused Friendly to pay unjustifiable expenses related to their defense of this lawsuit or efforts to cover up the defendants’ misconduct.
Other portions of the complaint referencing benefits to Friendly’s Board members are even more vague, such as paragraph 28, which reads:
[UJpon information and belief, Smith shifted assets and opportunities to himself or TRC through joint vendor relationships in which favorable terms with Friendly were a quid pro quo for favors, perks or “sweetheart” deals that benefit Smith, TRC and/or members of the Friendly Board. The joint vendors include . . . the investment bank unit of the French bank Societe Generate where Ezzes was a managing director, as well as other vendors.
In Count VI for declaratory judgment, paragraph 72 reads:
Defendants deny wrongdoing and refuse to take corrective action thereby harming Friendly and enriching themselves and perpetuating their control of the corporation without an appropriate justification. In some cases they have failed to disclose material information even to innocent Friendly officers who are responsible for compliance with SEC and Sarbanes-Oxley requirements.
IV. Legal Analysis
A. Rule 12(b)(6) Standard and Materials Considered
The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Nader v. Citron, 372 Mass. 96, 98 (1977). The Court accepts as true the facts as alleged in the complaint and the inferences which may be drawn from them in the plaintiffs favor. See id. The Court does not accept legal conclusions cast in the form of factual allegations, nor is the plaintiff entitled to rest upon subjective characterizations or conclusoiy descriptions of a “general scenario which could be dominated by unpleaded facts.” Schaer v. Brandeis University, 432 Mass. 474, 477 (2000), quoting Judge v. Lowell, 160 F.3d 67, 77 (1st Cir. 1998). See, e.g., In re Greater Southeast Community Hospital Corp., 2006 WL 2793177 *2 (Bankr.D.Dist.Colo. Sept. 21, 2006) (“the court need not accept inferences drawn by the plaintiffs if such inferences are unsupported by the facts set out in the complaint”); In re the Walt Disney Company Derivative Litig., 825 A.2d 275, 285 (Del.Ch. 2003) (“Conclusory statements, without specific allegations of facts to support them, will not suffice” to defeat Rule 12(b)(6) motion) . The Court “is not required to accept every strained interpretation of the allegations proposed by the plaintiff, but the plaintiff is entitled to all reasonable inferences that logically flow from the complaint. ” Malpiede v. Townson, 780 A.2d 1075, 1083 (Del. 2001).
The parties dispute whether the analysis on these Rule 12(b)(6) motions ought to take into account matters outside the complaint, specifically my rulings on the SLC’s motions to dismiss and for reconsideration, and the exculpatory clause in Friendly’s restated articles of organization. In deciding the Rule 12(b)(6) motions, the Court considers “the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.” Schaer v. Brandeis University, 432 Mass. at 477 (plaintiff failed to state breach of contract claim where contract provision relied upon did not require investigation as asserted by plaintiff).
The SLC’s motion to dismiss under G.L.c. 156D, §7.42, tested the independence of the SLC and whether it had conducted a reasonable, good faith inquiry before rejecting the plaintiffs claims. In contrast, the two Rule 12(b) (6) motions to dismiss before me are concerned with whether the claims about the outside directors’ purported misconduct as alleged in the complaint are precluded by the exculpatory clause in Friendly’s restated articles of organization. The analytical distinctions between these two types of motions to dismiss persuade me that my rulings on the SLC’s motions to dismiss and for reconsideration, although they are a matter of public record, have no place in the determination of the outside directors’ Rule 12(b)(6) motions.
The exculpatory provision in Friendly’s restated articles of organization, which tracks precisely what is permitted in G.L.c. 156D, §2.02, is also amatter of public record.[4] The plaintiff does not contest its validity, but rather challenges only the extent to which it applies to the counts against the outside directors. See Trenwick America Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 189 n.58 (Del.Ch. 2006), citing Solomon v. Armstrong, 747 A.2d 1098, 1121 n.72 (Del.Ch. 1999) (“[I]t is well settled that where certain facts are not specifically alleged (or in dispute) a Court may take judicial notice of facts publicly available in filings with the SEC”); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (court may take judicial notice of public records in considering Rule 12(b)(6) motion). The plaintiff does not claim to be surprised or disadvantaged by the outside directors’ reliance upon the exculpatory provision, even though it is beyond *177 the four comers of the complaint. Moreover, the Plaintiff has taken advantage of the SLC discovery record by revising what had been the proposed amended complaint to include new allegations against the outside directors and simply labeling the latest version of the complaint “updated.”[5]
In this context, the allegations of the complaint can be fairly tested by taking into account the exculpatory provision. See Schaer v. Brandeis University, 432 Mass. at 477; In re BHC Communications, Inc. Shareholder Litig., 789 A.2d 1, 9-10 (Del. 2001) (court considered on a Rule 12(b)(6) motion whether certificates of incorporation containing exculpatory provisions precluded claims against directors, where those provisions were not alleged in the complaint but plaintiffs conceded their existence). Therefore, I take judicial notice of Friendly’s corporate exculpatory provision and consider it in connection with the motions to dismiss without converting the outside directors’ Rule 12(b)(6) motions to summary judgment motions.
B. The Exculpatory Provision
General Laws c. 156D, §2.02(b)(4), permits Massachusetts corporations to adopt provisions in their articles of incorporation which shield directors from liability for damages arising out of the breach of the duly of care, but not claims based upon breach of the duties of loyalty and good faith, intentional misconduct, or knowing violations of the law.[6] See G.L.c. 156D, §2.02(b)(4). The exculpatory provision in Art. VLB. of Friendly’s restated articles of organization tracks the language of G.L.c. 156D, §2.02(b)(4), and reads:
No director of this Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director notwithstanding any provision of law imposing such liability; provided, however, that this Article shall not eliminate or limit any liability of a director (i) for any breach of the director’s duty of loyally to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 61 or 62 of the Massachusetts Business Corporation Law, or (iv) with respect to any transaction from which the director derived an improper personal benefit.
The outside directors are protected by the exculpatory clause only if their liability is exclusively attributable to a violation of the duty of care. Gesoff v. IIC Industries, Inc., 902 A.2d 1130, 1164 (Del.Ch. 2006). See also In re Fleming Packaging Corp., 2006 WL 2587916, *4 (Bankr.C.D.Ill. Sept 8, 2006) (claimbased solely on breach of duty of due care is precluded if corporation has adopted exculpatory provision). Even claims of gross negligence do not survive a motion to dismiss based upon the exculpatory clause. See Malpiede v. Townson, 780 A.2d at 1094-95.
C. The Fiduciary Duties
The fiduciary duly of directors encompasses the three often intertwined duties of care (or attention), loyalty, and good faith. See In re Abbott Laboratories Derivative Shareholders litigation, 325 F.3d 795, 808 (7th Cir. 2003). “The duty of care refers to the responsibility of a corporate fiduciary to exercise, in the performance of his or her tasks, the care that a reasonably prudent person would use under similar circumstances.” In re Verestar, Inc., 343 B.R. 444, 472 (Bankr.S.D.N.Y. 2006). The duty of care “consists of an obligation to act on an informed basis.” Shoen v. SAC Holding Corp., 137 P.3d 1171, 1178 (Nev. 2006); In re Caremark Intern, Inc. Derivative Litigation, 698 A.2d 959, 967, 968 (1996) (“Where a director in fact exercises a good faith effort to be informed and to exercise appropriate judgment, he or she should be deemed to satisfy fully the duty of attention”). See Guttman v. Huang, 823 A.2d 492, 506-07 (Del.Ch. 2003) (dismissing claims that directors failed to exercise oversight where plaintiff did not allege that audit committee had dear notice of serious accounting irregularities in violation of legally mandated accounting and disclosure standards yet chose to ignore them or to encourage their continuation).
The duty of loyalty is expressed in G.L.c. 156D, §8.30(a)(3), which mandates each director to discharge his or her duties “in the manner that the director' reasonably believes to be in the best interests of the corporation.” G.L.c. 156D, §8.30(a)(3). The “duty of loyalty requires the board and its directors to maintain, in good faith, the corporation’s and its shareholders’ best interests over anyone else’s interests.” Shoen v. SAC Holding Corp., 137 P.3d at 1178; Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993) (the duty of loyalfy is met when “the best interest of the corporation and its shareholders takes precedence over an interest possessed by a director, officer or controlling shareholder”) . “The duty of loyalty derives from the prohibition of self-dealing that inheres in the fiduciary relationship.” In re Verestar, Inc., 343 B.R. at 472.
A breach of loyalty claim requires some form of self-dealing or misuse of corporate office for personal gain... The classic example is when a fiduciary either appears on both sides of a transaction or receives a personal benefit not shared by all shareholders.
In re Greater Southeast Community Hospital Corp. I, 2006 WL 2793177, *9 (Bankr.D.Dist.Colo. Sept. 21, 2006) (ellipses, quotations and citations omitted).
To defeat a motion to dismiss a claim for breach of the duty of loyalty, a plaintiff must allege facts showing that the directors are beholden to a controlling person or so under the other’s influence that their discretion would be sterilized. See Orman v. Cullman, 794 A.2d 5, 24 (Del.Ch. 2002).
A breach of the fiduciary duty to act in good faith, which has been described as “just another permutation of the fiduciary’s duty of loyalty,” In re Greater Southeast Community Hospital Corp. I, 2006 WL *178 2793177, *9 (Bankr.D.Dist.Colo. Sept. 21, 2006), occurs where a director’s conduct is motivated by subjective bad faith, which is an actual intent to do harm, or where the director has engaged in an intentional dereliction of duty or a conscious disregard for his or her responsibilities. In re the Walt Disney Derivative Litigation, 906 A.2d 27, 64, 66 (Del. 2006). On the other hand, gross negligence, including a failure to inform one’s self of available material facts, without more, falls short of constituting a breach of the fiduciary duty to act in good faith. Id. at 64-65.
Some aspects of the exculpatory provision are not in dispute here. Nothing in the complaint comes close to alleging that the outside directors knowingly violated the law or made improper distributions. What the parties debate is whether the complaint contains any allegations which directly or by reasonable inference could support claims that the outside directors engaged in conduct which falls outside the protections of the exculpatory provision, that is, (1) breached the duty of loyalty, (2) breached the duty of good faith by undertaking acts or omissions in bad faith, or by engaging in intentional misconduct in breach of their fiduciary duty, or (3) derived an improper personal benefit from the transactions or conduct in question.
The allegations in the complaint do not support an inference that the outside directors violated the fiduciary duties of loyalty or good faith. With respect to the duty of loyalty, the complaint is devoid of factual allegations that the outside directors had any material reason to be beholden to Smith or TRC. That Ezzes and Ledsinger served on the TRC Board for the approximate period of 1988 to 1999, but only on the Friendly board thereafter, does not support an inference that either of these directors had a reason to put TRC’s interests over Friendly’s in the transactions at issue, which largely transpired years after they left TRC. Contrast Teachers Retirement System of Louisiana v. Aidinoff, 900 A.2d 654, 670 (Del.Ch. 2006) (pled facts supported claim for breach of duty of loyalty against corporation’s directors who were also officers, directors, and stockholders of second and third corporate entities which received hundreds of millions of dollars from first corporation for no legitimate reason, but only to siphon money from first corporation to defendant officers and directors); In re Verestar, Inc., 343 B.R at 473 (complaint stated breach of duly of loyalty claim by alleging that most or all of defendant directors of plaintiff subsidiary corporation were simultaneously officers and/or directors of defendant parent corporation, that defendant directors were beholden to parent corporation when making decisions on behalf of plaintiff subsidiary corporation, and complaint detailed defendant directors’ acts advancing interests of parent corporation and damaging interests of plaintiff subsidiary).
Nothing in the complaint specifically alleges or supports a reasonable inference that the outside directors had divided loyalties to Friendly and Smith or TRC due to financial interests, or that they had any other type of motivation or material reason to make decisions contrary to Friendly’s best interests. There is no specific allegation that the outside directors engaged in self-dealing or that they received a personal gain from being on both sides of any transaction. The plaintiffs allegation that Smith and his family were the principal users of the Learjet fails to suggest how Ezzes or Ledsinger could have benefited personally from his approval of the reimbursements from Friendly to TRC. The allegation that “TRC has paid professional consulting fees to Ezzes and/or firms with which he has been associated” does not identify exactly who received the fees, when they were received, or for what purpose, and therefore falls far short of supporting an inference that Ezzes had divided loyalties between TRC entities and Friendly or that he ever benefited personally in any transactions between Friendly and TRC.
The allegations that “Ledsinger was employed for a substantial period by an investor that owned one-third to one-half of TRC” and that “Ledsinger served as the designated representative of a company that until approximately 1998 owned one-third to one-half of TRC’s stock”[7] likewise lack any measure of meaningful detail on which to base a claim for breaching the duty of loyalty. The indefiniteness as to the length and nature of the relationship between Ledsinger and the unidentified company or investor is insufficient to support an inference that Ledsinger was somehow torn at any pertinent time between Friendly and TRC.
The plaintiff also claims that Manning was hired to do consulting work for TRC “while this lawsuit was pending” at a rate of $5,000 per day. He does not allege that TRC ever paid Manning any amount. These pleaded facts do not support an inference that Manning benefited personally from his acts or omissions as a Friendly director with respect to Friendly’s transactions with TRC.
Nor are there factual allegations underpinning the plaintiffs contention that any of the outside directors acted in bad faith or engaged in intentional misconduct. The bare assertion that the outside directors consciously ignored, condoned, and covered up improper transactions between Smith, TRC, and Friendly is not grounded in factual allegations. The contention that the Board and/or the 2002 Special Committee failed to conduct a rigorous, independent investigation into the plaintiffs initial concerns regarding the costs of the corporate aircraft and the Illinois office does not, on the facts pleaded in the complaint, support a claim of more than gross mismanagement or inattention which does not add up to a breach of the duties of loyalty or good faith The conclusoiy statement that the Board failed to seek a legal opinion as to the propriety of paying TRC $1 million for the aircraft after being informed of the “agreement’s” enforceability is insufficient to support an inference of bad faith, intentional misconduct, or breach of the duty of loyalty. The allegations that the Board’s rejection of the plaintiffs $50 million loan offer *179 was a pretext to protect “the interests of Smith, TRC, other Board members and/or perpetuating their control of Friendly” is no more than a conclusory description which the Court need not accept. See Schaer v. Brandeis University, 432 Mass. at 477.
Nothing in the well-pleaded allegations of the complaint supports a reasonable inference that the outside directors stood to gain in any tangible way by rejecting the loan offer or by any of the challenged transactions or decisions, nor does the complaint allege facts showing that the outside directors lacked a legitimate reason for their decisions. The allegations that the Board’s conduct “is mainly intended to perpetuate [the Board’s] control of Friendly” and “to promote their own selfish interests at the expense of the corporation and its stockholders and to deter investor initiatives that might increase the value of Friendly’s stock” are not clarified by any specifically pled facts.
The complaint does not contain facts suggesting that the decisions by the outside directors were motivated by bad faith, self-interest, or an intention to derive any personal material benefit or to harm Friendly. See In re Verestar, Inc., 343 B.R. at 473 (allegations that directors caused corporation to make acquisitions despite knowledge that substantial losses would be generated were breach of duty of care claims which could not be saved by conclusory assertion that directors’ acts and omissions were not taken in good faith or involved intentional misconduct). In sum, the plaintiff alleges facts supporting claims of negligence in violation of the duty of care because the outside directors did not carefully investigate or support litigation of the plaintiffs claims and did not make prudent business decisions in Friendly’s business dealings with TRC and Smith. This conduct falls squarely within the protection of the exculpatory provision.
Although the exculpatory provision most obviously governs the claim for breach of the fiduciary duty (Count I), it also predudes the remaining claims, as they are premised upon the same factual allegations regarding the outside directors. To prevail on the claim for corporate waste (Count III), the plaintiff must show that the directors’ decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation’s best interests. See Grogan v. O’Neil, 292 F.Sup.2d 1282, 1293 (D.Kan. 2003), citing White v. Panic, 783 A.2d 543, 554 n.36 (Del. 2001).
As discussed above, the plaintiff does not allege facts indicating that the outside directors acted in bad faith or that their decisions were so irrational that bad faith could be reasonably inferred from them. The claim that the defendants committed corporate waste by “using or disposing of [corporate assets] for purposes that have no appropriate relation to Friendly’s corporate interests” is no more than a legal conclusion which, absent factual allegations more adequate than those discussed above, the Court need not accept. See In re the Walt Disney Company Derivative Litig., 825 A.2d at 285. Moreover, the allegation that “waste includes any use of Friendly resources! ) that has the effect of perpetuating defendants’ control of Friendly or providing benefits to defendants or their associates” is far too vague to support an inference that the purported misconduct was motivated by bad faith or that they received improper benefits. Because the alleged conduct by the outside directors in the claim for corporate waste amounts to ordinary inattention and/or inadvertence which does not exceed gross negligence, the exculpatory provision bars the plaintiffs ability to recover monetary damages on Count III.
Count IV for aiding, abetting, and directly participating in the misappropriation of corporate assets is also dead-ended by the exculpatory provision. Two essential elements of this claim are the breach of the fiduciary’s duly and knowing participation in that breach. In re Lukens, Inc. Shareholders Litigation, 757 A.2d 720, 734-35 (Del.Ch. 1999) (“knowingparticipation” elementmust be reasonably inferred from alleged facts; aiding and abetting claim premised upon conclusory allegations as to “knowing participation” was dismissed). Again, the plaintiff has alleged no particularized facts to support a reasonable inference that the outside directors knowingly participated in a type of breach of fiduciary duty apart from the duty of care. The claim that these defendants misappropriated “corporate assets by consciously ignoring, condoning, or covering up improper transactions by Smith and TRC after receiving actual or constructive notice of wrongdoing” is merely a conclusory assertion regarding the defendants’ intent, but it is ungrounded by specific factual allegations. See In re Verestar, Inc., 343 B.R at 473.
Count V for unjust enrichment and restitution does not allege any additional facts about the outside directors’ conduct or how any of them might have been unjustly enriched so as to maintain this claim, much less that they acted in bad faith or engaged in deliberate misconduct. Although the caption of Count V states that it is leveled against all of the defendants, the text of the claim is extremely vague, in that it alleges that “Smith, the TRC companies, and some of the directors or members of their families have been unjustly enriched, directly or indirectly, by the inequitable conduct described above.” (Emphasis added.) The allegation woven throughout the complaint that the outside directors or their families or associates have somehow benefited by the directors “perpetuating” their control over Friendly is wholly lacking in any meaningful detail to support a claim of unjust enrichment. It is unclear which of the directors have allegedly been unjustly enriched, or which (if any) of their family members or associates may have received improper benefits, and the nature of the direct or indirect benefits flowing to these unidentified recipients.[8] No other allegations shed much light on this nebulous claim.
*180 The generalized claim in Count V, insofar as it relates to the outside directors, does not support a reasonable inference that Daly, Manning, Ledsinger or Ezzes engaged in conduct in violation of the fiduciary duties of loyalty or good faith or that any of these four defendants received an improper personal benefit from their acts and omissions as directors with respect to Friendly’s dealings with TRC, Smith, or Smith’s family. In conclusion, the plaintiffs well-pleaded allegations state no more than due care claims, which are barred by the exculpatory provision.[9]
II. Effect of Exculpatory Provision on Claim for Declaratory Judgment
The plaintiff contends that the exculpatory provision has no effect upon Count VI, the claim for declaratory relief, and that even if the other claims against the outside directors were dismissed, Count VI could serve to order “remedies relative to things like poison pill” such that the Court could order the outside directors how to implement poison pills “should it come up.”
Consistent with G.L.c. 156D, §2.02(b)(4), the exculpatory provision precludes monetary damages but does not expressly or impliedly affect claims for equitable relief. However, the Court has some discretion in deciding whether a case is appropriate for declaratory relief. Pazolt v. Director of the Division of Marine Fisheries, 417 Mass. 565, 569 (1994). An express purpose of declaratory judgment is to afford parties relief from uncertainty as to rights, duties, status and other legal relations. City of Boston v. Keene Corp., 406 Mass. 301, 304-05 (1989); G.L.c. 231A, §9.
The plaintiffs rationale for keeping the outside directors as defendants in this action is without any factual basis in the complaint. Nowhere does the plaintiff allege anything about a “poison pill.” The plaintiff should not be able to subject the outside defendants and Friendly to the cost and time of discovery into matters not raised in the complaint in order to embark upon a fishing expedition. Furthermore, keeping the outside directors in this litigation to determine their liability for conduct for which the plaintiff cannot recover monetary damages would serve no real purpose, but rather only add confusion. Cf. Emerald Partners v. Berlin, 787 A.2d 85, 92 (Del. 2001) (“if the shareholder complaint alleges only a duty of care violation, the entry of a monetary judgment following a finding of unfairness would be uncol-lectible [and] a trial pursuant to the entire fairness standard of review [to prove that the challenged transaction was entirely fair to the shareholder plaintiff] would serve no useful purpose”). In this context, I conclude that Count VI, only insofar as it is against the outside directors, is not appropriate for declaratory relief and shall be dismissed.
ORDER
For all the foregoing reasons, it is hereby ORDERED that the motions to dismiss under MassR.Civ.P. 12(b)(6) by the defendants Daly, Manning, Ezzes and Ledsinger are ALLOWED.

Ledsinger ceased being a director of Friendly in March 2005.

Counsel for the defendants have submitted affidavits stating that the attached copies of the Restated Articles of Organization of Friendly Ice Cream Corporation are true and correct. The Court notes that although the copies are not certified and do not specify the date on which the restated articles were duly adopted, the plaintiff does not contest their validity.

The current complaint is actually the fourth version presented to the Court. The plaintiff filed an original complaint on January 2, 2003, amended it on February 26, 2003, moved to amend again with a “Verified Supplemental Amended Complaint” on February 7, 2005, and filed the current “corrected and updated” complaint on June 5, 2006. The upshot is that the plaintiff has taken ample opportunities to flesh out the allegations in his complaint.

General Laws c. 156D, §2.02(b)(4), provides that the articles of organization of a corporation may set forth:
a provision eliminating or limiting the personal liability of a director to the corporation for monetary damages for breach of fiduciary duty as a director notwithstanding any provision of law imposing such liability; but the provision shall not eliminate or limit the liability of a director (i) for any breach of the director’s duty of loyalty to the corporation or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) for improper distributions under section 6.40, or (iv) for any transaction from which the director derived an improper personal benefit.

See complaint, paragraph 45(a).

Despite the reference to Ezzes’ connection with Societe Generate, the plaintiff fails to plead specific facts as to how Ezzes could have benefited from the joint vendor relationship, when these deals occurred, when Ezzes was the managing director of Societe Generate, and whether the beneficiary of these “sweetheart” deals was Smith, TRC, or Ezzes. At the hearing on the outside directors’ motions to dismiss, the plaintiff conceded that although he knows most about unjust enrichment perpetuated by Smith and TRC, the allegations of the complaint are not limited to those two defendants, that the plaintiff needs discovery to team more, and that the outside directors may be involved in a form of unjust enrichment referred to as “entrenchment.” These comments confirm the speculative nature of the allegations against the outside directors in Count V, and do not justify subjecting these defendants to discovery.

To the extent that this reasoning could be interpreted as inconsistent with my discussion of Daly’s risk of personal liability in ruling on the SLC’s motion for reconsideration of my denial of the SLC’s motion to dismiss, I note that (1) the issue of Daly’s risk of personal liability was not dispositive of the independence question, and (2) the present analysis controls and may be viewed as an amendment to, if not withdrawal of, my reasoning on this sole issue.